# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1677

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Bobby Marvin Collins, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 10, 2002

Filed:  March 3, 2003

_____

Before WOLLMAN, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Bobby Marvin Collins was convicted of possession of ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) and was sentenced to 235 months' imprisonment.  Collins contends on appeal that the district court[1] erred by denying his motion to suppress, limiting his cross-examination of a witness to non-leading questions, and refusing to reopen his case to allow a subpoenaed defense witness to testify.  Collins also contends that the district court improperly relied on a prior

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

discharged state court conviction to enhance his sentence and that his 235-month sentence for "mere possession of ammunition" violates the Eighth Amendment. We affirm.

## I. Background

During the early morning hours of July 9, 2001, two Minneapolis police officers responded to a report of "shots fired" near the intersection of 21st Avenue North and Oliver Avenue North. As the officers approached the area, they saw a Chevrolet Caprice parked on the north side of 21st Avenue and drove slowly past it. Officer Jeffrey Mercill observed three individuals in the car: the driver, Collins, and a front seat passenger, both of whom where slumped over, and a female passenger in the back seat. Advising his partner to pull over, Officer Mercill directed a spotlight on the Caprice.

Officer Mercill approached the driver's side of the Caprice with his gun drawn. The driver's side window was down. Officer Mercill asked the backseat passenger, Erika Hawkins, whether anyone in the vehicle had been shot. Hawkins responded that no one had been shot and that Collins and Deon Mallet, the front-seat passenger, were sleeping. Officer Mercill shouted repeatedly at Collins and Mallet, asking whether they had been shot, but neither one responded. Officer Mercill then leaned into the vehicle through the open window "to see if [he] could tell if it maybe was a crime scene or if [Collins] had been shot." Upon doing so, Officer Mercill observed a black-handled handgun sticking out of Collins' left back pocket,[2] and he reached in to seize the gun. Collins was subsequently awakened and taken into custody.

---

[2]Collins contends that it is disputed whether the gun was actually in his pocket or whether it was wedged in the driver's seat. This dispute, however, is immaterial to the issues on appeal.

The gun seized from Collins was loaded with six rounds of .32 caliber ammunition. After examining the firearm, Bureau of Alcohol, Tobacco and Firearms Agent James Mazzon concluded that it was a .32 caliber Forehand and Wadsworth revolver. Mazzon opined that the gun was manufactured sometime been 1890 and 1905, but could not determine the exact year. A firearm manufactured in or before 1898 is deemed an antique and is not subject to federal firearm laws. 18 U.S.C. § 921(a)(3), (16).

Collins moved to suppress the evidence obtained from the stop. The magistrate judge[3] recommended that this motion be denied, concluding that the evidence was admissible under the plain view doctrine. Collins also moved to dismiss the indictment, or, in the alternative, to strike surplusage from the indictment, arguing that one of the prior convictions listed in the indictment could not be used for purposes of enhancing his sentence under 18 U.S.C. § 924(e). The magistrate recommended that this motion also be denied. Collins did not object to the magistrate judge's report and recommendation, and the district court adopted it.

At trial, the government called Erika Hawkins as a witness. During cross-examination, the court instructed Collins' counsel to avoid leading questions, stating that "as a practical matter," Hawkins was a defense witness. Collins' counsel objected and later moved for a mistrial on the ground that the court's ruling constituted an improper restriction on the right to confront an adverse witness. The court overruled the objection and denied the motion for a mistrial.

Collins subpoenaed Deon Mallet for trial. Mallet, however, failed to appear at the appointed time, and the district court issued a bench warrant for his arrest. After the government rested, the court advised Collins that the trial could be

---

[3]The Honorable E. S. Swearingen, United States Magistrate Judge for the District of Minnesota.

continued to the following day to see if Mallet could be located. Collins chose to proceed with the trial. Later that afternoon, after closing arguments had been completed and the jury had been instructed, Mallet entered the courtroom. Collins then moved to reopen the evidence to present Mallet's testimony. The court denied the motion, noting that Collins had declined the court's offer to continue the trial.

The jury found Collins guilty of possession of ammunition by a felon. Based on his three prior convictions for violent felonies, Collins was subject to an enhanced sentence pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. The district court sentenced Collins to 235 months' imprisonment, the bottom of the guideline range.

## II. Analysis

### A. Fourth Amendment Claim

Collins contends that the district court erred by concluding that the evidence seized from him was admissible under the plain view doctrine. Because Collins failed to object to the magistrate judge's report and recommendation, "the factual conclusions underlying [the] defendant's appeal are reviewed for plain error." United States v. Looking, 156 F.3d 803, 809 (8th Cir. 1998) (citations omitted). "[We] review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Neumann, 183 F.3d 753, 755 (8th Cir. 1999) (citation omitted).

Under the plain view doctrine, police may seize an object without a warrant if "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." United States v. Hatten, 68 F.3d 257, 260 (8th Cir. 1995) (internal quotation

-4-

marks and citations omitted).  Collins challenges the government's evidence with respect to the doctrine's first requirement of "prior justification."  See id.  Although conceding that "[w]hen the officers approached the vehicle, they clearly had the right to investigate the situation," Collins argues that Officer Mercill had no basis for continuing the investigation once Hawkins advised him that none of the occupants had been injured.  Thus, Collins concludes, Officer Mercill's act of leaning into the vehicle constituted an unreasonable search.  We disagree.

"Exigent circumstances may provide a basis for a warrantless entry."  United States v. Clement, 854 F.2d 1116, 1119 (8th Cir. 1988).  "One exigent circumstance that may justify entry without a warrant is when the police 'reasonably believe that a person within is in need of immediate aid.'"  United States v. Selberg, 630 F.2d 1292, 1295 (8th Cir. 1980) (quoting Mincey v. Arizona, 437 U.S. 385, 392 (1978)); Mincey, 437 U.S. at 392 ("We do not question the right of the police to respond to emergency situations."); see also United States v. Cervantes, 219 F.3d 882, 889 (9th Cir. 2000) (finding justification for adopting the emergency doctrine . . . "in [police officers'] community caretaking function to respond to emergency situations" (citation omitted)).  Officer Mercill and his partner were responding to a "shots fired" call when they came upon the Caprice.  The vehicle was parked near the area where shots reportedly were heard, and the officers observed two men slumped over in the front seat.  Under such circumstances, it was entirely reasonable for Officer Mercill to lean into the vehicle to confirm that the men were not injured.  See Mincey, 437 U.S. at 392-393; see also United States v. Haley, 581 F.2d 723, 724-26 (8th Cir. 1978) (concluding that where the officer observed defendant lying on the street and reasonably believed defendant was in need of immediate assistance but could not find any identification on defendant's person, the officer's search of defendant's briefcase for identification was justified by exigent circumstances).   Indeed, for the officers to have accepted Hawkins' explanation as true (i.e., that Collins and Mallet were merely sleeping), as Collins argues they should have done, would have been irresponsible and, quite possibly, a basis for civil liability had the individuals in fact

been injured. Thus, assuming that Officer Mercill's act of leaning into the vehicle constituted a search, we conclude that exigent circumstances justified this warrantless entry and that the gun was lawfully seized under the plain view doctrine. Mincey, 437 U.S. at 393 ("[T]he police may seize any evidence that is in plain view during the course of their legitimate emergency activities."); Hatten, 68 F.3d at 261 (recognizing that "[h]idden guns, even badly hidden guns, are by their nature incriminating," and concluding that the warrantless seizure of a gun from defendant's car was justified under the plain view doctrine).[4]

## B. Trial Claims

Collins contends that the district court erred by refusing to allow him to cross-examine Erika Hawkins. We agree with the government, however, that Collins has mistakenly equated his right to confront and cross-examine witnesses with a right to employ leading questions. Despite Collins' suggestion to the contrary, this is not a case in which the trial court prohibited all inquiry into a particular issue. See, e.g., Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); see also Davis v. Alaska, 415 U.S. 308, 310-311, 318 (1974) (noting that although defense counsel was permitted to ask key prosecution witness whether he was biased, defense counsel was "unable to make a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial"). Instead, the district court simply limited cross-examination to non-leading questions.

We have stated that "[t]he extent of cross-examination and the restriction of the use of leading questions rest in the sound discretion of the trial court." United States

---

[4]The magistrate judge concluded that the officers had conducted a lawful Terry stop, thus satisfying the first requirement of the plain view doctrine. We see no need to address this issue, as "we may affirm a district court's judgment on any basis supported by the record." United States v. Santos-Garcia, 313 F.3d 1073, 1079 (8th Cir. 2002) (quotation marks and citation omitted).

v. Bensinger Co., 430 F.2d 584, 591 (8th Cir. 1970) (citations omitted); see also Alpha Display Paging, Inc. v. Motorola Communications & Elecs., Inc., 867 F.2d 1168, 1171 (8th Cir. 1989) ("[A] district court must be given great discretion in governing the mode of interrogating witnesses."). "The exercise of the trial court's discretion will not be reversed unless there is a clear abuse of discretion and prejudice to the defendant." Bensinger Co., 430 F.2d at 591. After reviewing the record, we are persuaded that Collins was afforded "an effective opportunity for cross-examination" with respect to Hawkins. Id. We therefore find no abuse of discretion in the district court's rulings.

Collins also contends that the district court erred in refusing to reopen the evidence to allow Deon Mallet's testimony. We review the district court's decision for abuse of discretion, and we find none, particularly in light of the court's offer to continue the trial. United States v. Jones, 880 F.2d 55, 59 (8th Cir. 1989) (standard of review); White v. Wyrick, 651 F.2d 597, 599 (8th Cir. 1981).

## C. Sentencing Enhancement

Collins argues that the district court erred in enhancing his sentence pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. We review this issue de novo. United States v. Dockter, 58 F.3d 1284, 1289 (8th Cir. 1995).

Collins was convicted of possessing ammunition in violation of 18 U.S.C. § 922(g)(1). The indictment listed three prior felony convictions: Minnesota convictions for third degree assault in 1988 and 1990, and a Minnesota conviction for aggravated robbery in 1992. Section 924(e)(1) requires a mandatory minimum sentence of fifteen years' imprisonment for three-time violent felons who violate § 922(g). "Under U.S.S.G. § 4B1.4(a), a defendant who is subject to an enhanced sentence under 18 U.S.C. § 924(e) is an armed career criminal." United States v. Maddix, 96 F.3d 311, 314 (8th Cir. 1996). Applying this guideline, the district court

determined that Collins' adjusted offense level was 33 and his criminal history category VI, resulting in a guideline range of 235-293 months. U.S.S.G. § 4B1.4(b)(3)(B), (c)(1). Collins was sentenced to 235 months.

"Not all violent felony convictions . . . count for purposes of . . . § 924(e)." Caron v. United States, 524 U.S. 308, 312 (1998). Section 921(a)(20), which excludes certain convictions from consideration, provides in relevant part:

> What constitutes a conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

Collins contends that because Minnesota restored his civil rights with respect to the 1988 conviction, and because this restoration did not include any express restriction on his right to possess firearms, the 1988 conviction can not be used to enhance his sentence. Minnesota's civil rights restoration statute "restore[s] [a] person to all civil rights and to full citizenship, with full right to vote and hold office, the same as if [the] conviction had not taken place . . . ." Minn. Stat. § 609.165 subd. 1. "This statutory restoration of civil rights operates automatically upon the expiration of a convicted felon's sentence." United States v. Traxel, 914 F.2d 119, 123 (8th Cir. 1990) (citing Minn. Stat. § 609.165 subd. 2). In 1987, Minnesota amended section 609.165 to include a firearms limitation. In accordance with this amendment, the order of discharge restoring a person's civil rights "must provide that a person who has been convicted of a crime of violence . . . is not entitled to ship, transport, possess, or receive a firearm until ten years have elapsed since the person was restored to civil rights . . . ." Minn. Stat. § 609.165 subd. 1a.

On June 18, 1989, Collins was issued a certificate of discharge upon completing his sentence for the 1988 conviction. Because this certificate did not "expressly provide[] that [he] may not ship, transport, possess, or receive firearms," Collins argues that his 1988 conviction may not be counted for purposes of the § 924(e) enhancement. 18 U.S.C. § 921(a)(20). To support his claim, Collins relies on our decision in United States v. Wind, 986 F.2d 1248 (8th Cir. 1993). Wind was convicted of unlawful possession of a firearm, a rifle, in violation of 18 U.S.C. § 922(g). We concluded that two of the Wind's prior Minnesota felony convictions could not be used as a basis for a § 924(e) sentencing enhancement. With respect to one of those convictions, Judge McMillian noted that due to an apparent oversight, the order of discharge failed to exclude expressly the right to possess firearms, as required by section 609.165, subdivision 1a of the Minnesota Code. Wind, 986 F.2d at 1252. Thus, Judge McMillian concluded that because of this omission, the conviction did not qualify as a predicate conviction for purposes of the § 924(e) sentencing enhancement. Id. Collins contends that under this analysis, his 1988 conviction can not be used to enhance his sentence.

Collins, however, ignores the special concurring opinion of two of the three judges on the Wind panel. We agree with the government that this opinion is binding with respect to the issue it addresses. According to the special concurrence:

> The fact that the order of discharge itself did not contain an express limitation on the right to possess firearms is not controlling. This court has held that even if the discharge certificate itself does not include the express limitation required by § 921(a)(20), a prior conviction is used for sentence enhancement if the defendant may not legally possess the firearm in the state that convicted him.

Wind, 986 F.2d at 1252 (Magill, J. & Hansen, J., concurring) (citing Davis v. United States, 972 F.2d 227, 231 (8th Cir. 1992)). Noting that Wind's order of discharge did not contain an express limitation, the concurrence turned to the question of "whether Minnesota law prohibits him from possessing the rifle at issue." Id. The

concurrence concluded that although Minnesota law barred felons from possessing pistols, it did not prohibit felons from possessing rifles. Id. (citing Minn. Stat. § 624.713 subd. 1(b)). Thus, the concurrence agreed that Wind's conviction could not be used to enhance his sentence. Id.

The Wind concurrence, by itself, does little to aid the government. Collins was convicted of possessing ammunition in violation of 18 U.S.C. § 922(g)(1). His 1989 certificate of discharge did not include an express limitation on his right to possess firearms, and Minnesota law did not prohibit Collins from possessing ammunition. Accordingly, if we were to apply the Wind concurrence's two-prong analysis, Collins' 1988 conviction could not be used to enhance his sentence.

Wind's concurrence, however, must be read in conjunction with the Supreme Court's subsequent decision in Caron v. United States, 524 U.S. 308 (1998). Caron was convicted of possessing shotguns or ammunition in violation of 18 U.S.C. § 922(g)(1). Caron, 524 U.S. at 311. The district court enhanced Caron's sentence pursuant to § 924(e) based on his three prior Massachusetts convictions and one prior California conviction. Id. The Massachusetts law that restored Caron's civil rights allowed him to possess rifles or shotguns, but prohibited him from possessing handguns outside his home or business. Id. The Court concluded that this handgun restriction activated the "unless" clause of 18 U.S.C. § 921(a)(20), making the Massachusetts' convictions count for purposes of § 924(e)'s sentencing enhancement. In doing so, the Court stated that "[w]hile state law is the source of law for restorations of other civil rights, . . . it does not follow that state law also controls the unless clause." Id. at 316. The Court also noted that "[t]he unless clause looks to the terms of the past restorations alone and does not refer to the weapons at issue in the present case." Id. at 314.

In light of Caron, we must now revisit the two-prong inquiry set forth in the Wind concurrence. Instead of examining whether Minnesota state law prohibits

-10-

Collins from possessing the ammunition at issue, we must now determine whether Minnesota law prohibits him from possessing any type of firearm.  See DeRoo v. United States, 223 F.3d 919, 926 (8th Cir. 2000) ("[W]hether state law allows [the defendant] to possess ammunition is immaterial. . . . Section 921(a)(20) does not also require the state to expressly exclude possession of ammunition." (citing Caron, 524 U.S. 308) (additional citations omitted)).  Both of the Wind opinions recognized that since 1975, Minnesota law has excluded the right to possess pistols from the civil rights restored to felons.  Wind, 986 F.2d at 1251; id. at 1252 (Magill, J. & Hansen, J., concurring) (citing Minn. Stat. § 624.713 subd. 1(b)); see also Traxel, 914 F.2d at 124 (citing Minn. Stat. § 624.713 subd. 1(b)).  In accordance with Caron, this restriction activates the unless clause of 18 U.S.C. § 921(a)(20).  We must therefore conclude that Collins' 1988 conviction counted for purposes of § 924(e)'s sentencing enhancement.[5]  Thus, we must also conclude that the district court did not err in enhancing his sentence.

_____

[5]In doing so, we recognize that the Seventh Circuit has disagreed with our mode of analyzing whether prior Minnesota convictions satisfy the unless clause of 18 U.S.C. § 921(a)(20).  See United States v. Glaser, 14 F.3d 1213, 1218 (7th Cir. 1994) ("When the state gives the person a formal notice of the restoration of civil rights, however, the final sentence of § 921(a)(20) instructs us to look, not at the contents of the state's statute books but at the contents of the document."); see also United States v. Erwin, 902 F.2d 510, 512-13 (7th Cir. 1990) ("The second sentence of § 921(a)(20) is an anti-mousetrapping rule.  If the state sends the felon a piece of paper implying that he is no longer 'convicted' and that all civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution.").  We, however, remain bound by the analysis set forth in our prior panel decisions, as modified by Caron.  Young v. Hayes, 218 F.3d 850, 853 (8th Cir. 2000) ("This panel is bound by previous panel opinions of our own Court, but we are not so bound if an intervening expression of the Supreme Court is inconsistent with those previous opinions."); Drake v. Scott, 812 F.2d 395, 400 (8th Cir.1987) ("One panel of this Court is not at liberty to disregard a precedent handed down by another panel.").

-11-

### D. Eighth Amendment Claim

Collins argues that his sentence of 235 months for "mere possession of ammunition" violates the Eighth Amendment's prohibition against cruel and unusual punishment. We have found that the mandatory minimum sentence of fifteen years' imprisonment under 18 U.S.C. § 924(e)(1) does not violate the Eighth Amendment. United States v. Villar, 184 F.3d 801, 803 (8th Cir. 1999); United States v. Rudolph, 970 F.2d 467, 470 (8th Cir. 1992); see also United States v. Yirkovsky, 259 F.3d 704, 706-07 (8th Cir. 2001) (concluding that defendant's statutorily-mandated 180-month sentence did not violate the Eighth Amendment, notwithstanding fact that defendant was found with only one round of ammunition in his possession), cert. denied, 122 S. Ct. 2674 (2002); United States v. Cardoza, 129 F.3d 6, 18 (1st Cir. 1997) ("[The defendant] has not been sentenced to a 235-month incarceration solely because he was in possession of a single bullet, as his brief strenuously argues. Rather, he has been sentenced to such a term because (1) he was a convicted felon in possession of the bullet, and (2) he had previously been convicted of at least three violent felonies."). Thus, given Collins' criminal history, we can not find that his 235-month sentence is unconstitutional.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.