Ryan Daquan MUNDY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–CA–000507–MR.

Court of Appeals of Kentucky.

June 17, 2011.

Steven Buck, Assistant Public Advocate, Frankfort, KY, for Appellant.

Jack Conway, Attorney General of Kentucky, David W. Barr, Assistant Attorney General, Frankfort, KY, for Appellee.

Before ACREE, LAMBERT and THOMPSON, Judges.

## OPINION

ACREE, Judge:

The issue before this Court is whether the Fayette Circuit Court erred when it determined the warrantless search of Ryan Mundy's vehicle was lawful pursuant to the emergency aid exception because the arresting officer reasonably believed that Mundy was in need of immediate aid. After careful consideration, we reverse and remand for further proceedings.

### Facts and Procedure

On September 5, 2009, at approximately 5:40 a.m., Officer Jonathan Bastian was on patrol in the area of 4th Street and Chestnut Street, a residential area in Lexington, Kentucky. While driving northbound on Chestnut Street, Officer Bastian observed Mundy sitting in his car, which was legally parked on the side of the road. The car's engine was not running, its headlights were off, and the driver's side and the front passenger windows were down. Officer Bastian circled the block, which took approximately one minute.

On his return, Officer Bastian saw that Mundy was still in the car, sitting in the driver's seat with his head against the back of the seat. Officer Bastian testified that he did not know if Mundy was asleep, passed out, or needed medical attention. He also testified that it was uncommon for a car to be parked on the side of the road with its windows rolled down at 5:40 a.m. in a high crime neighborhood. As a result, Officer Bastian pulled in partially behind Mundy's car to check on Mundy. Officer Bastian testified that his stop was solely self-initiated; he had not received a 911 call concerning Mundy before he reached the car.

After stopping behind Mundy's vehicle, Officer Bastian activated his spot light, but did not turn on his emergency lights. Officer Bastian approached Mundy's car, stopping at the "B-post," the vertical support of the vehicle's roof between the front rear passenger doors. The officer observed Mundy for approximately 10 seconds. During this time, Mundy was asleep and only took one deep breath. Officer Bastian testified that Mundy's slow breathing rate caused him concern. He explained that Mundy's hands were near his lap and that he did not see any weapons. He could not recall whether the keys were in the ignition.

The officer testified that, in accordance with his training, he opened the unlocked front driver's side door to wake up Mundy. As Officer Bastian opened the door, he observed a baggie of crack cocaine on the floor between the driver's seat and the door. The baggie was not visible until Officer Bastian opened the car door. He secured the baggie by placing it on top of the car's roof. Mundy then began to awaken. Officer Bastian handcuffed one of Mundy's wrists and, after a brief struggle, placed Mundy under arrest.

Officer Bastian acknowledged that he did not knock on the door or on any part of the car to first try to get Mundy's attention. Additionally, Officer Bastian did not attempt to say anything to Mundy prior to opening the car door, nor did he ask Mundy if he was okay through the open car windows. Officer Bastian also did not ask Mundy if he needed help or medical attention after Mundy woke up. Officer Bastian agreed that the car did not smell of alcohol or marijuana, and no paraphernalia or other evidence of illegal activity was observed.

On November 4, 2009, the Fayette County Grand Jury indicted Mundy on one count of first-degree trafficking in a controlled substance and one count of resisting arrest. Shortly thereafter, Mundy filed a motion to suppress the baggie of

crack cocaine claiming that Officer Bastian unlawfully entered and searched his car without a proper search warrant. The circuit court conducted an evidentiary hearing on January 20, 2010, and ultimately overruled Mundy's motion concluding that Officer Bastian's search of Mundy's car fell within the "emergency aid" exception to the warrant requirement because the officer reasonably believed Mundy was in need of immediate aid and he responded accordingly.

On January 29, 2010, Mundy entered a conditional guilty plea to first-degree possession of a controlled substance. As part of his guilty plea, Mundy reserved the right to appeal the circuit court's denial of his suppression motion.

### Standard of Review

When determining if a motion to suppress was properly denied, the appellate court is presented with a mixed question of fact and law. Initially, the appellate court must review the circuit court's findings of fact. Those factual findings are reviewed under the clearly erroneous standard and are deemed conclusive if they are supported by substantial evidence. *Commonwealth v. Banks*, 68 S.W.3d 347, 349 (Ky. 2001); *see also* Kentucky Rules of Criminal Procedure (RCr) 9.78. Next, the appellate court must undertake a *de novo* review to determine if the law was properly applied to the facts. *King v. Commonwealth*, 302 S.W.3d 649, 653 (Ky.2010).

### Analysis

To determine whether the circuit court's factual findings were supported by substantial evidence, we reviewed the testimony of Officer Bastian, the only testifying witness. As noted by the circuit court, the material facts in this case are largely undisputed. The factual findings adopted by the circuit court in its order mirror the testimony provided by Officer Bastian, as set forth above. Accordingly, the circuit court's findings of fact are supported by substantial evidence, and are therefore conclusive.

Next, we undergo a *de novo* review of the law as applied to the facts. The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. CONST. amend IV; *Commonwealth v. Hatcher*, 199 S.W.3d 124, 126 (Ky.2006). A search or seizure without a proper warrant is presumed to be unreasonable unless it falls into one of the delineated exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

One such exception is "plain view." *Hunt v. Commonwealth*, 304 S.W.3d 15, 27 (Ky.2009). Under the plain view exception, a police officer may seize evidence without a warrant *if the "initial entry was lawful*, the evidence was inadvertently discovered, and the incriminating nature was readily apparent." *Id.* (citing *Hatcher*, 199 S.W.3d at 126) (emphasis supplied). Consequently, "[w]hen an officer is where he has a right to be, he may seize contraband which comes into 'plain view.'" *Gillum v. Commonwealth*, 925 S.W.2d 189, 191 (Ky. App.1995) (citing *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978)).

In the case before us, it is undisputed that Officer Bastian saw the baggie of crack cocaine in plain view after he opened the front driver's side door to Mundy's car. Consequently, resolution of this issue turns on whether it was lawful for Officer Bastian to open the car door, putting him in a place where he had a right to be when he saw the baggie of crack cocaine. The Fayette Circuit Court found, and the Commonwealth argues to this Court, that the "emergency aid" exception to the warrant

requirement justified Officer Bastian's warrantless entry into Mundy's vehicle. We disagree.

In *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978), the United States Supreme Court explained that:

> [w]e do not question the right of the police to respond to emergency situations. Numerous states and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in immediate need of aid.

*Mincey*, 437 U.S. at 392, 98 S.Ct. at 2413. The Kentucky Supreme Court, citing *Mincey*, circuitously adopted the "emergency aid" exception to the Fourth Amendment's warrant requirement in *Todd v. Commonwealth*, 716 S.W.2d 242, 247–48 (Ky.1986). Since that time, the Kentucky Supreme Court has consistently applied the emergency aid doctrine to situations in which law enforcement entered a home in order to assist a person in need of immediate aid. *See Hughes v. Commonwealth*, 87 S.W.3d 850, 852 (Ky.2002) (police officers entered a residence after receiving a call that the victim had been missing for two days and had failed to pick up her children, did not answer her apartment door, and police officers smelled an unusual odor emanating from the victim's apartment); *Mills v. Commonwealth*, 996 S.W.2d 473, 480 (Ky. 1999) (police followed a blood trail from a murder scene to a nearby home); *Gillum*, 925 S.W.2d at 190–91 (a concerned citizen called 911 reporting that his elderly neighbor, who lived alone and had a serious heart illness, had not been seen in quite some time, had left his truck door open overnight, and was unresponsive to the caller's telephone calls and knocks on the neighbor's door).

The parties did not cite, nor did our research reveal, Kentucky case law that directly addresses the question of whether the emergency aid exception applies to automobiles and, if so, the parameters thereof. This particular factual scenario presents an issue of first impression in this Commonwealth.

■ At the outset, we must determine whether the emergency aid exception applies to automobiles. As noted, the Fourth Amendment is designed to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." *South Dakota v. Opperman*, 428 U.S. 364, 377, 96 S.Ct. 3092, 3101, 49 L.Ed.2d 1000 (1976) (Powell, J., concurring). The United States Supreme Court has made clear that a citizen's expectation of privacy in his vehicle is worthy of Fourth Amendment protection. *See Coolidge v. New Hampshire*, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971) ("The word automobile is not a talisman in whose presence the Fourth Amendment fades away...."); *New York v. Class*, 475 U.S. 106, 114–15, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986) ("A car's interior as a whole is ... subject to Fourth Amendment protection from unreasonable intrusions by the police."). It is well-settled, however, that a constitutional disparity remains between houses and automobiles. *Opperman*, 428 U.S. at 382, 96 S.Ct. at 3103 (Powell, J., concurring). "Although the expectation of privacy in an automobile is significantly less than the traditional expectation of privacy associated with the home, the unrestrained search of an automobile and its contents would constitute a serious intrusion upon the privacy of an individual in many circumstances." *Id.*

■ The central purpose of the aptly named "emergency aid" exception is to allow police officers to "assist persons who are seriously injured or threatened with

such injury." *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006). Law enforcement officers frequently perform essential "community caretaking functions," such as "helping stranded motorists, returning lost children to anxious parents, and assisting and protecting citizens in need," *State v. LaBarre,* 160 N.H. 1, 992 A.2d 733, 738 (2010), that are wholly divorced from law enforcement's criminal-related functions. *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973). Because of the inherent mobility of motor vehicles, emergency and often life-threatening situations frequently arise, to which law enforcement is summoned. *Id.* at 441, 93 S.Ct. at 2528 (noting that motor vehicles frequently become disabled or involved in accidents on public highways resulting in police-citizen contact); *Opperman,* 428 U.S. at 367–68, 96 S.Ct. at 3096 ("In discharging their varied responsibilities for ensuring the [public's] safety, law enforcement officials are necessarily brought into frequent contact with automobiles."). Society desires that police officers assist citizens in such life-threatening situations; the emergency aid exception permits them to do so. Consequently, despite the differences between homes and automobiles, we find no reason for making the emergency aid exception unavailable under appropriate circumstances when police officers conduct a warrantless search of a motor vehicle.

Case law from other jurisdictions, *see, e.g., United States v. Collins,* 321 F.3d 691, 694–95 (8th Cir.2003); *United States v. Kelly,* 267 F.Supp.2d 5, 7–10 (D.D.C.2003); *Anchorage v. Cook,* 598 P.2d 939, 941–42 (Alaska 1979); *State v. Clayton,* 113 Idaho 817, 748 P.2d 401, 402 (1988); *State v. Kersh,* 313 N.W.2d 566, 567–69 (Iowa 1981) *abrogated on other grounds by State v. Lake,* 476 N.W.2d 55 (Iowa 1991); *State v. Graham,* 340 Mont. 366, 175 P.3d 885, 890–

92 (2007); *Lapp v. Dep't of Transp.,* 632 N.W.2d 419, 421–24 (N.D.2001); *State v. Dunn,* 158 Wis.2d 138, 462 N.W.2d 538, 540–41 (Wis.App.1990), as well as relevant secondary authority, support the conclusion that the emergency aid exception applies equally to motor vehicles.

> As is also true with respect to premises, police sometimes enter vehicles to aid a person in apparent distress. If the police find a person unconscious or disoriented and incoherent in a vehicle ... it is reasonable for them to enter the vehicle for the purpose of giving aid to the person in distress[.]

3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.4 (4th ed.2010). Therefore, we hold that the emergency aid exception to the Fourth Amendment's warrant requirement applies to automobiles.

■ Having so found, we next determine whether these circumstances justify invoking the emergency aid exception in the case *sub judice.* In its order denying Mundy's motion to suppress, the circuit court concluded that Officer Bastian reasonably believed that Mundy was in need of immediate aid. In reaching its conclusion, the circuit court adopted and applied a three prong test from the Ninth Circuit: "(1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or placed searched." *Martin v. City of Oceanside,* 360 F.3d 1078, 1081–82 (9th Cir.2004).

■ The three prong test applied by the circuit court does not properly state the

law in this Commonwealth. The United States Supreme Court recently clarified that a test under the emergency aid exception which inquires into the police officer's subjective state of mind fails to comport with established Fourth Amendment jurisprudence. *Brigham City*, 547 U.S. at 404, 126 S.Ct. at 1948.

> Our cases have repeatedly rejected this approach [previously stated as inquiring into whether the police officer was primarily motivated by intent to arrest and seize evidence]. An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify the action.... The officer's subjective motivation is irrelevant.

*Id.* (emphasis in original; internal quotation marks and brackets omitted); *see also Michigan v. Fisher*, —— U.S. ——, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (2009) (clarifying that the emergency aid exception does not turn on the police officer's subjective belief, but instead on whether the police officer has "an objectively reasonable basis for believing that a person within is in need of immediate aid").

In *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir.2010), the Sixth Circuit, in discussing the emergency aid exception in the context of a warrantless search of a home, stated that "the police's entry must be based on an objectively reasonable belief, given the information available at the time of entry, that a person within the house was 'in need of imme-

diate aid.'" *Johnson*, 617 F.3d at 868 (quoting *Mincey*, 437 U.S. at 392, 98 S.Ct. at 2413). We find the Sixth Circuit's statement of the law well-reasoned and persuasive, and adopt its view.

■ Accordingly, we hold that the proper test for determining whether a police officer conducted a lawful warrantless search of a motor vehicle pursuant to the emergency aid exception is whether the police officer's entry into the vehicle was based on an objectively reasonable belief, given the information available at the time of entry, that a person within the vehicle was in need of immediate aid.[1]

On appeal, the Commonwealth asserts that the circuit court correctly found that Officer Bastian reasonably believed that Mundy was in need of immediate aid because neither the police officer's spotlight nor the officer's approach woke up Mundy, and Officer Bastian only observed Mundy take one deep breath in a ten-second span. In contrast, Mundy advocates that Officer Bastian's belief was not objectively reasonable because a person with an allegedly low respiratory rate who is simply sleeping in his car with the windows down on an early September evening does not indicate that he is in need of immediate aid. Because Officer Bastian engaged in a warrantless search of Mundy's vehicle, his conduct must be carefully scrutinized.

■ "Officers do not need ironclad proof of 'a likely serious, life threatening' injury to invoke the emergency aid exception." *Fisher*, 130 S.Ct. at 549. As we

---

1. Although we do not adopt the three-prong test as set forth by the Ninth Circuit, it is equally clear under Fourth Amendment jurisprudence that "a warrantless intrusion ... must not exceed the exigency that permits it." *Schreiber v. Moe*, 596 F.3d 323, 331 (6th Cir. 2010); *see also Mincey*, 437 U.S. at 393, 98 S.Ct. at 2413 ("[A] warrantless search must be strictly circumscribed by the exigencies

which justify its initiation."); *Hallum v. Commonwealth*, 219 S.W.3d 216, 222 (Ky.App. 2007) (explaining that when exigent circumstances permit a police officer to conduct a warrantless search, the police officer's conduct must be limited in scope to ensure it does not surpass the bounds of the exigent circumstances).

pointed out above, in determining whether a police officer lawfully conducted a warrantless search of a vehicle pursuant to the emergency aid exception, objective reasonableness is the key. *See id; Brigham City,* 547 U.S. at 403, 126 S.Ct. at 1947 (emphasizing that the "ultimate touchstone of the Fourth Amendment is reasonableness"); *Johnson,* 617 F.3d at 868.

The Eight Circuit's decision in *United States v. Collins,* 321 F.3d 691, 694–95 (8th Cir.2003), while not controlling, provides valuable guidance. In *Collins,* two police officers were responding to a report of "shots fired" when they came upon a car parked in the area where the shots were reportedly heard. The police officers observed two males slumped over in the car's front seats, and a female passenger in the back seat. The front driver-side window was down. After directing a spotlight at the vehicle, the officers approached the car and asked the female passenger if anyone in the vehicle had been shot. The female passenger claimed that no one had been shot and that the males in the front seats were sleeping. The police officers shouted repeatedly at the males, asking whether they were okay, but neither one responded. Consequently, one officer leaned into the vehicle to see if he could tell whether either male was injured. In doing so, the officer observed a black hand-gun in Collins' left back pocket. The police officer seized the gun and arrested Collins.

Collins challenged the warrantless entry claiming that the police officer's act of leaning into the car constituted an unreasonable search. The Eight Circuit, citing *Mincey,* recognized that an exception to the Fourth Amendment exists which permits the police to conduct a warrantless search of a vehicle if they "reasonably believe that a person within is in need of immediate aid." *Collins,* 321 F.3d at 694. The Eight Circuit determined that, based

on the "shots-fired" report, the car's location in the area where the shots were heard, and the failure of the victims to respond to the police officers' shouts, it was reasonable for the police officer to lean into Collins' car to ensure that the men inside were not shot or injured, thus rendering the police officer's warrantless search of Collins' car lawful. *Id.* at 695.

Objectively viewing the circumstances of the instant case, we are unable to conclude that it was reasonable for Officer Bastian to believe that Mundy was in need of immediate aid. Although Officer Bastian specifically testified that he was concerned about Mundy's well-being, a mere subjective concern is not enough to justify a warrantless entry into Mundy's vehicle. In contrast to *Collins,* Officer Bastian did not receive a report of a potentially dangerous or life-threatening situation in the vicinity, nor did he receive a 911 call regarding Mundy's well-being or safety. Additionally, in *Collins,* the police officers not only had a reasonable belief that someone might be injured because of the report of shots fired, the police officers also tried to arouse the car's occupants by yelling repeatedly, and only entered the car after the occupants were unresponsive to the police officers' shouts. *Collins,* 321 F.3d at 695.

In the case before us, Officer Bastian failed to take any additional steps to determine if Mundy was actually unresponsive or in need of immediate help prior to opening Mundy's car door. Officer Bastian did not attempt to wake up Mundy by knocking on the car's door or any portion of the car, shining his flashlight near Mundy's face, or yelling or shouting at Mundy. A person sleeping in his vehicle on a summer night, by itself, does not justify a reasonable belief that he is in medical peril necessitating aid. Further, Mundy's car was not running, its headlights were off

and it was legally parked, indicating that Mundy intentionally parked his car at its present location, as opposed to a person becoming ill or experiencing a medical emergency who abruptly pulls over or passes out with the engine running and the headlights activated.

A survey of what was not present in this case is perhaps more indicative of why it was unreasonable for Officer Bastian to believe that Mundy was in need of immediate aid: Mundy's vehicle did not show signs of a wreck or other damage; no blood was present on Mundy or the vehicle, inside or outside; Mundy's body was not contorted, slumped, or in an unusual position; Mundy's face and body did not contain signs of injury, bruising, or distress; no weapons were in view on Mundy's person or in his vehicle; no smell of alcohol, marijuana, or other drugs was present; and there were no signs of foul play or violence. Accordingly, we hold that, based on all the information available to Officer Bastian at the time of entry, viewed objectively, it was unreasonable for him to believe that Mundy was in need of immediate aid.

We caution that "[t]he test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts." *Coolidge v. New Hampshire*, 403 U.S. 443, 509–10, 91 S.Ct. 2022, 2060, 29 L.Ed.2d 564 (1971) (Black, J., concurring and dissenting). Thus, we decline to establish particular factors, or actions in which a police officer must engage which would automatically indicate that the po-

lice officer had an objectively reasonable belief that the person within the vehicle was in need of immediate aid. Instead, we rest our decision on the specific facts of this case. Officer Bastian's entry into Mundy's car constituted an unlawful warrantless search in violation of the Fourth Amendment.

### *Conclusion*

Though the emergency aid exception to the Fourth Amendment's warrant requirement applies to automobiles, a warrantless search pursuant to this doctrine will only be upheld if the police's entry into the vehicle was based on an objectively reasonable belief, given the information available at the time of entry, that a person within the vehicle was in need of immediate aid. In the case at hand, Officer Bastian's entry into Mundy's car was not objectively reasonable because the information available to Officer Bastian at the time of entry did not reasonably indicate that Mundy was in immediate need of aid.

We therefore reverse and remand for additional proceedings consistent with this opinion.

ALL CONCUR.