RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

<table>
<tr><td>

MONICA JOHNSON,

         *Plaintiff-Appellant,*


    *v.*


CITY OF MEMPHIS; THE CITY OF MEMPHIS
POLICE DIVISION; KENNETH ADAMS,
individually and in his official capacity as an
officer of the City of Memphis Police
Department; MICHAEL DERRICK, as
Administrator ad Litem of Melvin Rice,
deceased, as said decedent acted in his
individual capacity and as police officer of
the City of Memphis,

         *Defendants-Appellees.*

</td><td>

No. 09-5046

</td></tr>
</table>

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-02374—Samuel H. Mays, Jr., District Judge.

Argued: January 12, 2010

Decided and Filed: August 24, 2010

Before: BATCHELDER, Chief Judge; SUTTON, Circuit Judge; WISEMAN,
District Judge.[*]

_____

## COUNSEL

**ARGUED:** Walter Lee Bailey, Jr., WALTER BAILEY & ASSOCIATES, Memphis,
Tennessee, for Appellant. Henry L. Klein, Sr., APPERSON CRUMP PLC, Memphis,
Tennessee, for Appellees. **ON BRIEF:** Walter Lee Bailey, Jr., WALTER BAILEY &
ASSOCIATES, Memphis, Tennessee, for Appellant. Henry L. Klein, Sr., APPERSON
CRUMP PLC, Memphis, Tennessee, for Appellees.

_____

[*]The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of
Tennessee, sitting by designation.

1

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Chief Judge.  Plaintiff-Appellant Monica Johnson ("Plaintiff"), widow of decedent Xavier Johnson ("Johnson"), appeals the district court's grant of summary judgment to Defendant-Appellee City of Memphis ("City") in her 42 U.S.C. § 1983 action arising out of a home entry by Memphis police officers that Johnson claims was in violation of the Fourth Amendment.  Plaintiff also appeals the district court's denial of her motion to amend her complaint.  For the reasons below we affirm.

**I.**

This matter arose out of the death of Xavier Johnson at his home in Memphis, Tennessee on April 22, 2004.  On that night, police officers Kenneth Adams ("Adams") and Melvin Rice ("Rice") were both on duty, driving separate vehicles.  At 9:11 P.M., they each received separate radio calls from their dispatcher to respond to a "911 hang call" from 619 Knightsbridge.[1]  Rice was first on the scene and notified dispatch.  He approached the front of the house and found the front door wide open.  He advised dispatch of the open door, then announced that the police were present.  Receiving no response, he entered with his weapon drawn.  Adams arrived and saw Rice inside the doorway with his weapon drawn, so he drew his own weapon and followed Rice inside.  At some point after the officers entered, a second call came in to dispatch with sufficient information to classify the call as a "mental consumer."

The parties contest the following sequence of events, though the dispute does not affect this appeal.  According to the Defendants, Rice, who is now deceased, told Adams he saw someone moving down the corridor ahead of them.  The officers agreed they should sweep the building to make sure that no one was hurt or in need of assistance.

———————————

[1]A 911 hang call occurs when a caller dials 9-1-1, hangs up before speaking with the operator, and the operator is unable to reach the caller when attempting to return the call.

As they rounded the corner near the stairs, Johnson appeared. Rice inquired as to why Johnson did not respond to the officers' calls. Johnson did not answer, but instead jumped on Rice and a fight ensued. Rice pushed Johnson back into a wall, but Johnson lunged forward and grabbed Rice's gun hand. Rice yelled to Adams that Johnson was going for his gun. Adams shouted repeatedly at Johnson to get down, then fired twice at Johnson. After Adams fired, Johnson threw Rice into a wall and charged Adams. Adams retreated, yelled at Johnson to get down, and continued to fire, but Johnson reached him and hit him with enough force to throw Adams against a wall and knock him out briefly. When Adams came to his senses, Johnson was dead at his feet.

The officers later learned that Johnson was not ordinarily dangerous, but was bipolar and off his medication. Plaintiff had dialed 911 and then hung up in order to leave the house. She called again a few minutes later and informed the dispatcher of the medical situation. Sadly, this information did not reach the officers on the scene until it was too late.

Plaintiff claims that this account is not consistent with the evidence. She relies on evidence from the medical examiner that the wounds were not characteristic of close range fire, and the fact that one of the bullets found in Johnson's body came from Rice's weapon.

On May 18, 2004, Plaintiff filed a complaint asserting a number of claims against the officers, the City, and the Memphis Police Department. In September, 2004, the district court dismissed the claims against the police department, as well as Plaintiff's Fifth, Fourteenth, and Fifteenth Amendment claims against the City and the individual officers. On February 3, 2006, Plaintiff consented to the dismissal of most of her remaining claims, including those brought under state law. Plaintiff's only remaining claim was under the Fourth Amendment pursuant to 42 U.S.C. § 1983. On August 15, 2007, Plaintiff filed a motion to amend her complaint based on dispatcher negligence and to reinstate the previously dismissed state law claims against the City. Defendants Adams and the City filed separate motions for summary judgment. The district court denied Plaintiff's motion to amend her complaint, denied Adams' motion for summary

judgment, and granted the City's motion for summary judgment. Adams was later dismissed from the case with Plaintiff's consent. Plaintiff filed a motion to reconsider the denial of her motion to amend her complaint and the grant of the City's motion for summary judgment. The district court denied the motion and this timely appeal followed.

## II.

Although this Court will "generally review a denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion, 'when the Rule 59(e) motion seeks review of a grant of summary judgment, . . . we apply a *de novo* standard of review.'" *Shelby County Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 375 (6th Cir. 2009) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)).

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .'" *United States v. McClain*, 444 F.3d 556, 561 (6th Cir. 2006) (quoting U.S. Const. amend. IV) (alteration in original). The "'chief evil'" that the Fourth Amendment protects against is the "'physical entry of the home.'" *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. U.S. Dist. Court for the E. Dist. of Mich.*, 407 U.S. 297, 313 (1972)). Searches of the home must be reasonable. *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). "This reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *Id.* at 252. Warrantless entries into the home are "presumptively unreasonable." *Payton*, 445 U.S. at 586.

As "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" there are several exceptions to the warrant requirement that are ultimately grounded in that standard. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Lists of recognized exceptions are inclusive rather than exclusive. "Exigent circumstances" are one such exception. *See Mincey v. Arizona*, 437 U.S. 385, 390 (1978) ("[W]arrants are generally required to search a person's home or his person unless the 'exigencies of the situation'

make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."); *Thacker*, 328 F.3d at 253. Exigent circumstances arise when an emergency situation demands immediate police action that excuses the need for a warrant. *United States v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984)). The government bears a "heavy burden" to demonstrate that such an exigency occurred. *Welsh*, 466 U.S. at 749–50. We have repeatedly recognized four situations that may rise to the level of exigency: "'(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others.'" *Thacker*, 328 F.3d at 253 (quoting *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994)).

The Supreme Court has also recognized that another "exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City*, 547 U.S. at 403. In *Brigham City*, police responded to a call complaining of a loud party in the neighborhood. *Id.* at 400–01. Through the home's front window the police saw a fight breaking out in the kitchen, although the only injury they witnessed was a cut lip. *Id.* The police announced their presence, entered without consent or a warrant, prevented further violence, and made several arrests. Reversing the Utah Supreme Court, the United States Supreme Court held that the entry was objectively reasonable under the circumstances and constitutional under the emergency aid exception. *Id.* at 406–07. "[L]aw enforcement officers 'may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *Michigan v. Fisher*, 558 U.S. __, 130 S. Ct. 546, 548 (2009) (per curiam) (quoting *Brigham City*, 547 U.S. at 403).

"Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Id.* at 549. Nor do officers need to wait for a potentially dangerous situation to escalate into public violence in order to intervene. *Id.* "'[T]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties.'" *Id.* (quoting *Brigham City*, 547 U.S. at 406).

The police's entry must be based on an objectively reasonable belief, given the information available at the time of entry, that a person within the house was "'in need of immediate aid.'" *Fisher*, 130 S. Ct. at 548 (quoting *Mincy*, 437 U.S. at 392).

The district court below relied on *United States v. Porter*, 288 F. Supp. 2d 716 (W.D. Va. 2003) in granting the City's motion for summary judgment. The police in *Porter* responded to a home security system alarm. *Id.* at 718. After receiving unconvincing explanations from several neighbors, the officers entered the house through the unlocked rear door to perform a protective sweep and determine if anyone was in need of assistance. *Id.* at 718–19. They found drugs and other contraband in the home, which the defendants later moved to suppress. The district court judge found that the police had an "objectively reasonable belief that 'an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within.'" *Id.* at 720, 722 (quoting *United States v. Moss*, 963 F.3d 673, 678 (4th Cir. 1992)). The district court further noted that "there can be no doubt that the conduct of the officers in this instance was exactly the type of police work the community would expect, and possibly even demand." *Id.* at 721.

We have not previously decided whether a 911 call, hang or otherwise, is by itself sufficient to allow officers to enter a home without a warrant or consent. *Thacker*, 328 F.3d at 254 (noting cases from the Seventh and Eighth Circuits which have done so). In *Thacker*, police and paramedics responded to a 911 call reporting a stabbing or cutting injury. *Id.* at 249. Upon approaching the door the police saw broken glass, liquid stains on the wall, and the intoxicated, belligerent plaintiff bleeding profusely from his wrist. *Id.* The police entered over plaintiff's protests to secure the area for the paramedics and investigate whether anyone else needed assistance. *Id*. at 249–50. We upheld the district court's grant of summary judgment for the police defendants on this claim, holding that the police were justified in entering without a warrant due to the exigencies of the situation. *Id.* at 254–55. The panel noted, however, that it did not decide the question of whether the 911 call alone justified entry. *Id*. at 254 & n.2.

A 911 hang call with an unanswered return call from the dispatcher has been found to be sufficient to justify an officer's objectively reasonable belief that someone inside the residence is in immediate need of assistance. *Hanson v. Dane County*, 599 F. Supp. 2d 1046, 1053 (W.D. Wisc. 2009). In *Hanson*, the police received a 911 hang call and no one answered the return call. Police responded and entered the open garage without a warrant or consent. *Id.* at 1051. An investigation followed which resulted in the plaintiff's arrest. The plaintiff then sued the police for a § 1983 violation, claiming that the entry violated the Fourth Amendment. *Id.* at 1049–50. The district court granted summary judgment to the defendants, holding that "[t]he hang-up 911 call and the unanswered 911 return call made it reasonable for [the police officers] to believe that somebody inside required immediate assistance." *Id.* at 1053–54. The district court explained:

> In this case defendants did not have specific information about the call, but that did not diminish their need to investigate further. If anything, a 911 hang-up call with an unanswered return call from the 911 dispatcher may present even more reason to believe that someone inside the residence is in immediate need of assistance. An unanswered 911 return call suggests that someone in the residence is injured or otherwise incapacitated so as to be unable to answer the return call.

*Id.* at 1053 (citing *United States v. Elder*, 466 F.3d 1090, 1090 (7th Cir. 2006)).

We hold that the combination of a 911 hang call, an unanswered return call, and an open door with no response from within the residence is sufficient to satisfy the exigency requirement. The district court was correct in finding that the police were justified in entering the home to sweep for a person in need of immediate assistance under the emergency aid exception. The whole point of the 911 system is to provide people in need of emergency assistance an expeditious way to request it. Indeed, in many communities, the use of 911 for any purpose other than to report an emergency or to request emergency assistance is at least a misdemeanor offense. *See*, *e.g.*, Tenn. Code Ann. § 7-86-316(a) (LexisNexis Supp. 2009) ("A 911 call for a communication that is for some purpose other than to report an emergency or an event that the person placing the call reasonably believes to be an emergency is a Class C misdemeanor."); Mich.

Comp. Laws Ann. § 750.411a (West 2004) (punishing any false reporting of crimes, including through the 911 system); Ohio Rev. Code Ann. § 4931.49(D) (LexisNexis 2000) ("No person shall knowingly use the telephone number of the 9-1-1 system to report an emergency if he knows that no emergency exists."); Columbus, Ohio, Code of Ordinances § 2317.33 (2010) ("No person shall knowingly use the telephone number of the 9-1-1 system if he knows that no emergency exists or for non-emergency telephone calls" subject to a "misdemeanor of the first degree."); Cleveland, Ohio, Codified Ordinances § 605.071 (2009) (punishing any knowingly improper use of the 9-1-1 system as a misdemeanor of the first degree).  Because a 911 call is by its nature an appeal for help in an emergency, the emergency aid exception best fits the attitude of police responding to a 911 call under the circumstances present here.  Given the information he had, Adams had "'an objectively reasonable basis for believing' that 'a person within [the house] [was] in need of immediate aid.'" *Fisher*, 130 S.Ct. at 548 (internal citation omitted) (first alteration in original) (quoting *Mincy*, 437 U.S. at 392).  The officers' actions—announcing their presence and, after receiving no answer, entering in order to perform a cursory search for any endangered or injured persons—was an objectively reasonable response.

Plaintiff's cited cases are either distinguishable or not as persuasive as *Fisher*, *Porter*, and *Hanson*.  *United States v. McClain* involved an investigation of a possible burglary, not an emergency aid situation.  444 F.3d 556, 564 (6th Cir. 2006) (requiring the government to show both probable cause and exigent circumstances to justify the warrantless search under the circumstances).  In *Kerman v. City of New York*, the Second Circuit reversed the district court's ruling that an anonymous 911 call was a sufficient basis for the police's conclusion that exigent circumstances justified their entry without a warrant, but the Circuit Court relied entirely on the unreliable nature of the anonymous 911 call.  261 F.3d 229, 235–36 (2d Cir. 2001) (citing *Florida v. J.L.*, 529 U.S. 266 (2000)).  No anonymous caller issues are presented here.

Plaintiff's reliance on *United States v. Meixner* is also misplaced.  No. 00-20025, 2000 WL 1597736 (E.D. Mich. Oct. 26, 2000) (unpublished).  In *Meixner*, police

responded to a 911 hang call where dispatch received no answer to its return call. *Id.* at *2. The police approached the house, where they were met at the door by the defendant. The defendant, intoxicated and irascible, opened the front door when the police knocked, but locked the storm door and refused them entrance. *Id.* at *3. Police saw a woman crying inside, who also told them to leave. *Id.* The police instead searched the house for anyone else in need of assistance, finding guns in the bedrooms. *Id.* at *3–4. The defendants filed a motion to suppress. The district court granted the motion, finding that the information available to the officers did not give rise to an objectively reasonable belief that exigent circumstances were present. *Id.* at *9–10. The district court gave great weight to its determination that the 911 hang call "conveyed *no* information. It was a hang-up call. There was no conversation at all, much less a report of an emergency." *Id.* at *8. Because of this, the court found that the officers could only establish a subjective *possibility* of there being someone in need of immediate assistance, which is insufficient to justify entry based on exigent circumstances. *Id.* at *9–10.

Besides being greatly different from the factual circumstances before us here, where the officers did not speak with the occupants of the house and were not specifically refused entry, *Meixner*'s discussion of the 911 hang-up call is unpersuasive. 911 hang-up calls *do* convey information. They do not convey certainties, but certainties are not required. *See Hill v. California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . ."). 911 hang-ups inform the police that someone physically dialed 9-1-1, the dedicated emergency number, and either hung up or was disconnected before he or she could speak to the operator. An unanswered return call gives further information pointing to a probability, perhaps a high probability, that after the initial call was placed the caller or the phone has somehow been incapacitated. In some percentage of cases involving this set of facts, a person is in need of emergency assistance. Because the "ultimate touchstone" of the Fourth Amendment is reasonableness, certainty is not required.

We hold that it was objectively reasonable for the police in this situation, given the information they had, to enter the house. We decline to establish a per se rule for all 911 hang calls and instead rest our decision on the specific facts of this case.[2]

**III.**

Plaintiff also appeals the denial of her motion to amend her complaint to add several state law claims. Plaintiff, however, appeals only the denial of permission to add her negligence claim based on the dispatcher's failure to inform the officers on the scene that Johnson was bipolar and off his medication. Plaintiff asserts that if this information had been properly acted upon, the officers would not have entered the house and a specialized unit would have been called in to resolve the situation without violence. The district court denied the amendment of this claim as futile because of the City's sovereign immunity. We agree and affirm.

Ordinarily we review for abuse of discretion the district court's denial of a motion to amend a pleading. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010). When the district court denies the motion because the amendment would be futile, however, we review *de novo*. *Id.*

Tennessee codified its sovereign immunity law in the Tennessee Governmental Tort Liability Act ("TGTLA"). Tenn. Code Ann. §§ 29-20-101 *et seq.* Section 29-20-201(a) provides that "[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result" from the exercise of government duties. "No party may bring a suit against 'the State' except 'in such manner and in such courts as the Legislature may by law direct.'" *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007) (quoting Tenn. Const. art. I, §17). "The State" includes municipalities. *Id.* (citation omitted). Tennessee courts will not find a waiver of sovereign immunity "unless there is a statute clearly and unmistakably

---

[2]We specifically acknowledge the importance in these situations of the information the responding officers do *not* have, and note that further facts, such as a yard full of children and a parent's explanation that one had dialed 911 and hung up, would significantly alter the analysis. Here the absence of other information is critical to the reasonableness of the officers' entry.

disclosing an intent upon the part of the Legislature to permit such litigation." *Id.* (internal quotation marks and citation omitted). The TGTLA removes immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment," but provides a list of exceptions to this removal of immunity. Tenn. Code Ann. §§ 29-20-205. Injuries that "arise[] out of . . . civil rights" are one such exception, that is, sovereign immunity continues to apply in those circumstances. *Id.* TGTLA's "civil rights" exception has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution. *See Hale v. Randolph*, 2004 U.S. Dist. Lexis 10173, *51 (E.D. Tenn. Jan. 30, 2004).

The district court found that "[a]ll of Plaintiff's claims against the City as an employer are in essence claims for violation of Johnson's constitutional rights." The district court found that the claim fell under the "civil rights" exception, and that the City is therefore immune under the TGTLA. This is consistent with the results reached by the majority of district courts addressing this question. *See*, *e.g., Campbell v. Anderson County*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) ("These torts are alleged to have been committed solely in the context of the violation of [plaintiff's] civil rights–this is in essence a civil rights suit."); *Hale*, 2004 U.S. Dist. Lexis 10173 at *51. *But see McKenna v. City of Memphis*, 544 F. Supp. 415, 419 (W.D. Tenn. 1982) (finding that the TGTLA "only restores municipal immunity for civil rights claims as such, not those for negligence as a matter of common law"). Plaintiff's claim regarding the dispatcher's negligence arises out of the same circumstances giving rise to her civil rights claim under § 1983. It therefore falls within the exception listed in § 29-20-205, and the City retains its immunity. Plaintiff's reliance on *DePalma v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 40 F. App'x 187 (6th Cir. 2002) (unpublished) is misplaced because, despite the factual similarities, the opinion does not address the civil rights exception. *Id.* at 193.

Because the plain language of the TGTLA preserves immunity for suits claiming negligent injuries arising from civil rights violations, we find that the district court did not err in denying Plaintiff's motion to amend and reinstate her state law claim. Because

we decide this issue under the TGTLA, we need not address the related abandonment, waiver, or statute of limitations arguments.

## IV.

Accordingly, we **affirm** the district court's grant of summary judgment to Defendants and denial of Plaintiff's motion to amend her complaint.