NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0789n.06

No. 10-5591

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Nov 22, 2011*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| JOHN PARTEE and FANNIE PARTEE, husband and wife, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE WESTERN DISTRICT OF TENNESSEE |
| CITY OF MEMPHIS, TENNESSEE, | ) ) | |
| Defendant-Appellee. | ) ) | OPINION |
| _____ | ) ) ) ) | |

Before:   GILMAN and KETHLEDGE, Circuit Judges; and LUDINGTON, District Judge.[*]

**RONALD LEE GILMAN, Circuit Judge.**  John Partee was arrested by Tommy L. Callahan, an off-duty City of Memphis police officer, after the vehicle that Partee was driving allegedly came into contact with a trailer that Callahan was towing.  Partee and his wife Fannie sued Callahan and the City of Memphis for violating 42 U.S.C. § 1983 and for committing several state-law torts during the arrest that allegedly caused injury to Partee.

The district court granted the City's pretrial motion to dismiss all of the Partees' state-law tort claims against the municipality, holding that the City retained immunity from such claims under Tennessee's Governmental Tort Liability Act (GTLA).  But the district court allowed the Partees'

---

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

§ 1983 claims against both defendants and their state-law tort claims against Callahan to proceed to trial before a jury. A verdict was rendered by the jury in favor of Callahan and the City after the court directed a verdict in favor of Callahan on the nonintentional tort claims.

The Partees have limited their appeal to the issue of whether the district court erred in dismissing the Partees' GTLA claims against the City under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On April 5, 2007, Partee and Callahan were both traveling southbound on Plough Road in Memphis, Tennessee when Partee's vehicle allegedly came into contact with the trailer that Callahan was towing. Partee continued driving. Callahan believed that Partee had committed a misdemeanor offense by failing to stop. As part of his training with the City of Memphis Police Department, Callahan began following Partee's vehicle with his own and contacted the police department's dispatcher to report the alleged crime. Callahan identified himself to the dispatcher as an off-duty officer and provided his badge number.

In addition to recounting the details of the misdemeanor, Callahan informed the dispatcher that Partee appeared to be driving under the influence of alcohol. Callahan said that he would continue to follow Partee. The dispatcher broadcast this information to local law-enforcement officers. Callahan followed Partee for several miles, providing periodic updates on Partee's location and driving behavior.

Partee ultimately arrived at his home on Aquarius Avenue in southeast Memphis. When Partee pulled into the driveway, Callahan stopped his own vehicle in front of the residence and exited. Callahan's Memphis Police Department badge was clipped conspicuously onto his belt. The Partees'

complaint alleges that Callahan drew his official service weapon as he approached Partee's car, identified himself as an officer with the Memphis Police Department, and ordered Partee to step out of the car. Without waiting for Partee to comply, Callahan allegedly opened the driver's side door, unbuckled Partee's seatbelt, struck Partee in the face with the handgun, and threw Partee to the ground. Callahan, according to the complaint, then lifted Partee's head and slammed his face onto the driveway. He allegedly held Partee there until two on-duty Memphis police officers arrived with a patrol car to transport Partee to the police station. Partee was issued a misdemeanor citation—under Callahan's badge number—for leaving the scene of an accident, driving under the influence, reckless driving, and public intoxication.

Some time thereafter, the Memphis Police Department's Inspectional Services Bureau commenced an investigation into the events surrounding Partee's arrest. It determined that Callahan had violated departmental disciplinary policies concerning compliance with regulations, truthfulness, and excessive force/abuse. The City of Memphis later held a disciplinary hearing on the same topic, finding that Callahan violated only the excessive force/abuse regulation. According to the Partees, the City failed to consider Callahan's full disciplinary record when it imposed a punishment limited to three months of suspended insurance benefits and three extra service days per month for three months.

The Partees' complaint was originally filed in state court, but it was removed to federal court by the City. As amended, it sets forth claims against Callahan and the City under 42 U.S.C. § 1983 and alleges that the City's immunity is waived by the GTLA. *See* Tenn. Code Ann. § 29-20-205. It asserts violations of Partee's Fourth and Fourteenth Amendment rights, as well as the state-law torts of assault and battery, negligence, negligent infliction of emotional distress, and intentional infliction

of emotional distress/outrageous conduct. The complaint specifically alleges that the City is liable both for Callahan's tortious conduct and for the City's own acts in "negligently screen[ing], hir[ing], train[ing], monitor[ing], supervis[ing], controll[ing], assign[ing], investigat[ing] and disciplin[ing] Defendant Callahan and other officers of the MPD which made the misconduct . . . a foreseeable result of the MPD's widespread and systemic deficiencies."

The City filed a motion to dismiss the Partees' complaint. In partially granting the motion, the district court concluded that the state-law tort claims did not fall within the City's waiver of immunity as set forth in the GTLA. The GTLA, the court noted, explicitly excludes civil rights violations from the statute's otherwise blanket waiver of immunity for suits arising out of negligent conduct by government employees. Describing the Partees' suit as "fundamentally a civil rights suit" that fell within the GTLA's express reservation of immunity, the court dismissed all of the state-law claims against the City.

Trial commenced in November 2009 on the Partees' § 1983 claims against both Callahan and the City, and on the state-law tort claims against Callahan only. During the trial, the court granted a directed verdict for Callahan on the state-law negligence claims, determining that the Partees had presented insufficient evidence to support a jury verdict in their favor on these counts. But the court allowed the intentional tort claims to proceed. The jury subsequently returned a verdict finding that Callahan had not used excessive force or committed any of the alleged intentional torts. After denying the Partees' motion for a new trial, the district court entered judgment for both defendants.

The Partees now appeal from the district court's pretrial order dismissing their state-law tort claims against the City. They do not appeal from the jury's verdict in favor of both defendants on the

§ 1983 claims and in favor of Callahan on the state-law intentional tort claims, or from the directed verdict in favor of Callahan on the state-law negligence claims.

## II.  ANALYSIS

### A.      Standard of review

We review de novo the district court's decision to grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Lambert v. Hartman*, 517 F.3d 433, 438-39 (6th Cir. 2008).  When deciding such a motion, a court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true.  *Id.*  But "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.      Governmental Tort Liability Act

The GTLA waives the immunity of state entities from suit and permits litigants to sue "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment."  Tenn. Code Ann. § 29-20-205.  "When immunity is removed by this chapter[,] any claim for damages must be brought in strict compliance with the terms of this chapter."  Tenn. Code Ann. § 29-20-201(c); *see also Ezell v. Cockrell*, 902 S.W.2d 394, 399 (Tenn. 1995) ("[S]tatutes in derogation of the common law are to be strictly construed and confined to their express terms, and that rule of construction has been expressly incorporated into the [GTLA] . . . ." (internal citation omitted)).

The GTLA permits the Partees to bring suit directly against the City "for injury proximately caused by . . . negligent act[s] or omission[s]" that might have been committed by Officer Callahan

while arresting Partee, provided that the Partees' claim avoids any of the statutory exceptions under which the City retains immunity. *See* Tenn. Code Ann. § 29-20-205; *McKenna v. City of Memphis*, 544 F. Supp. 415, 419 (W.D. Tenn. 1982) (concluding that the GTLA "only restores municipal immunity for civil rights claims as such, not those for negligence as a matter of common law"), *aff'd*, 785 F.2d 560 (6th Cir. 1986).

There is no cause of action set forth in the GTLA to hold the City directly liable for Callahan's alleged intentional conduct during Partee's arrest. *See* Tenn. Code Ann. § 29-20-205 (removing immunity only for negligently caused injuries). On the other hand, the negligent act of any city employee who hired, supervised, or disciplined Callahan can be attributed to the City and serve as a permissible basis under the GTLA for liability against the City. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 76 (Tenn. 2001) (holding that an employer was not entitled to immunity under the GTLA "where the injuries at issue were proximately caused by its negligence in failing to exercise reasonable care to protect [the plaintiff] from the foreseeable risk of an employee's intentional assault and battery"); *see also Baines v. Wilson Cnty.*, 86 S.W.3d 575, 580-81 (Tenn. Ct. App. 2002) (declining to grant immunity for the County's acts of "negligently allowing an employee . . . to intentionally cause [the plaintiff's] injury," but noting that the claim failed in any event because the plaintiff had "made no claim that Wilson County was negligent in hiring, training, supervising, or retaining [its employee]"). This would allow recovery from the City even though the immediate source of Partee's alleged injuries was the purported intentional conduct by Callahan. *See Nolan v. Memphis City Schs.*, 589 F.3d 257, 271 (6th Cir. 2009) (acknowledging the GTLA-based cause of action that could hold a city liable for an employee's intentional conduct).

In order to withstand the City's motion to dismiss, the Partees' complaint must plead each element of a negligence claim: duty, breach, causation in fact, proximate causation, and harm. *See Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011) (setting out the elements of a negligence claim). The Partees must also allege that the City was on notice of the foreseeable risk of harm that Callahan presented to the public. *See Limbaugh*, 59 S.W.3d at 84 (noting that the assault was a foreseeable consequence of the employer's failure to take reasonable precautions to protect residents in its nursing home); *Moore v. Houston Cnty. Bd. of Educ.*, No. M2010-02166-COA-R3-CV, 2011 WL 3715125, at *5-6 (Tenn. Ct. App. Aug. 23, 2011) (discussing the foreseeability requirement). But any independent negligent act by the City will not be a source of liability if it falls within the exceptions to suit listed in Section 29-20-205 of the Tennessee Code.

The exception relevant to the present case—colloquially referred to as the "intentional tort exception," *see Limbaugh*, 59 S.W.3d at 79—functions to preserve governmental immunity "if the injury arises out of . . . civil rights." Tenn. Code Ann. § 29-20-205(2). This reference to "civil rights" has been interpreted to include claims arising under the U.S. Constitution and 42 U.S.C. § 1983. *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010). A negligence claim falls within this exception where "the same circumstances giv[e] rise" to both the negligence and civil rights claims. *Id.* Stated another way, the GTLA "preserves immunity for suits claiming negligent injuries arising from civil rights violations." *Id.*

## C.     District court's disposition of the GTLA claims against the City

As an initial matter, the Partees argue that the City waived its immunity from suit when it removed this matter to federal court. They support their argument with an analogy to a state's waiver of Eleventh Amendment immunity when it voluntarily removes a state-court case to a federal forum.

-7-

*See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002) (holding that a state's removal of a state-court lawsuit to federal court constitutes a waiver of the state's Eleventh Amendment immunity). But cities do not receive protection under the Eleventh Amendment as do states, and the Partees have failed to explain how the constitutional principles animating sovereign immunity might apply to a city's assertion of state-law statutory immunity. We therefore reject the Partees' waiver-by-removal argument.

With respect to the merits of the appeal, we affirm the district court's decision to dismiss the negligence claims against the City that were based directly on Callahan's conduct while arresting Partee. The district court correctly concluded that these claims arise out of exactly the same circumstances as the Partees' civil rights claims, thus falling within the exception to the waiver of immunity set forth in the GTLA. *See Johnson*, 617 F.3d at 872; Tenn. Code Ann. §§ 29-20-205(2), 29-20-310(a).

We also affirm the district court's dismissal of the Partees' claim against the City for negligent hiring, supervision, and discipline (the negligent-hiring claim), albeit on a different ground than that articulated by the court below. The basis for the district court's decision on this issue was that the Partees' action was "fundamentally a civil rights suit" that fell within the GTLA's express reservation of immunity for the City. *See* Tenn. Code Ann. § 29-20-205. As support for its decision, the court relied on three unreported district court opinions, none of which cite a Tennessee state-court opinion so interpreting the GTLA. *See Uhuru v. City of Memphis*, No. 08-2150-V, 2008 WL 4646156 (W.D. Tenn. Oct. 17, 2008) (unpublished opinion); *Rhodes v. City of Chattanooga, Tenn.*, No. 1:04-CV-045, 2005 WL 2647921 (E.D. Tenn. Oct. 14, 2005) (unpublished opinion); *Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179 (E.D. Tenn. Jan. 30, 2004) (unpublished opinion).

The district court, however, did not parse the GTLA issue on a claim-by-claim basis, and therefore did not consider the distinction between a cause of action based on Callahan's conduct in arresting Partee and one based on allegations of the City's independently negligent acts in hiring, supervising, or disciplining the officer. A claim of the former type is analytically different from a claim that the City's own negligence proximately caused the Partees' harm, which ultimately occurred through Callahan's allegedly foreseeable acts. Some of the circumstances precipitating the negligent-hiring and civil rights claims—specifically Partee's arrest by Callahan—are clearly identical. But the Partees' negligent-hiring claim necessarily includes other circumstances that preceded the arrest and are temporally and factually distinct, including Callahan's hiring, the training he received, and any previous disciplinary problems he presented.

The Tennessee state courts have not explicitly determined whether the limited factual overlap between these claims would be sufficient to render the City immune from the negligent-hiring claim under the GTLA. Generally, in such a situation, the court should "predict how the state's highest court would interpret the statute." *Fed. Deposit Ins. Co. v. Stables*, 573 F.3d 289, 298 (6th Cir. 2009). But where interpretation of the state-law issue is not necessary in order to properly resolve the appeal, we find it advisable not to do so. *See Brown v. The Raymond Corp.*, 432 F.3d 640, 650 (6th Cir. 2005) (Ryan, J., concurring) ("[I]f a federal court exercising its diversity jurisdiction can properly decide the case before it without declaring a new rule of state law—for example, interpreting a provision of a state statute not previously interpreted by the state's highest court—it should do so" in order to abide by "settled and familiar principles of state/federal judicial deference" and avoid issuing an "opinion that is entirely *dicta*."); *see also White v. Olig*, 56 F.3d 817, 821 (7th Cir. 1995)

(declining to reach the state-law issue because it was "superfluous," given the court's dismissal of other predicate issues).

Here, we have no need to decide the reach of the GTLA's "intentional tort exception" to the facts of this case because the Partees have not disputed on appeal the directed verdict in favor of Callahan on the negligence claims or the jury's verdict in favor of him on the intentional claims. The Partees' inability to prove that Callahan's conduct, whether negligent or intentional, was actionable is thus the law of the case. *See Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (explaining that, under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks omitted)). Without actionable harm committed by Callahan, the Partees cannot support a claim for negligence against the City. *See Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 488 (6th Cir. 2007) (declining to hold the city liable for the officer's conduct after determining that the conduct was reasonable).

In sum, we decline to determine whether the additional circumstances required for a successful negligent-hiring claim—circumstances beyond those involved in Partee's arrest—would remove this claim from the civil rights exception to suit in the GTLA. Such a determination is unnecessary due to the disposition of the underlying claims against Callahan at trial. Thus, whether the district court's interpretation of the GTLA is correct or not need not be decided on this appeal.

### III. CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.