NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0553n.06

Case No. 14-6501

**FILED**
Aug 06, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DONOVAN JARRVEZ SAVAGE, Donovan Jarrvez Dowdy; DEVIN DOWDY; ESTATE OF HERNANDEZ DOWDY, | ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiffs-Appellants, | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| v. | ) | TENNESSEE |
| | ) | |
| CITY OF MEMPHIS; JAMES ARCHIE, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GIBBONS and COOK, Circuit Judges; MURPHY, District Judge.[*]

COOK, Circuit Judge. James Archie, a Memphis police officer, fatally shot suspected carjacker Hernandez Dowdy once in the back following a chase that included Dowdy crashing his car head-on into a civilian's. Dowdy's heirs sued Archie for using excessive force and the City of Memphis for failing to train, supervise, and discipline its police officers. The district court granted summary judgment to defendants on all claims, and we AFFIRM.

I.

A woman reported a carjacking to Memphis police on June 23, 2012. Although the officer assigned to the case, Taurus Nolen, determined on June 26 that the complainant had lied

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

about the carjacking, he failed to change the vehicle's status in the National Crime Information Center database before his shift ended that day. The database thus still listed a carjacking on June 27, the day of the shooting. That day, three Memphis police officers—James Archie, Guy Hendree, and Darnell Bridgeforth—arrived at the location last reported by the car's on-board GPS device. After spotting a car matching the description and license plate of the reportedly carjacked vehicle, Hendree activated his lights and siren.

Dowdy, who was driving the car, accelerated away from the officers at high speed, ran a stop sign, and collided head-on into another car. Archie testified that he saw Dowdy reach for the car's console before exiting and continuing his flight on foot. All three officers chased Dowdy on foot down a residential street and commanded Dowdy to stop and show his hands. Officer Hendree warned Dowdy to stop or he would shoot. Although the officers ran behind Dowdy, all observed that he ran with one hand in front of him at his waist. Archie testified that Dowdy looked back over his shoulder several times during the chase. Believing this to be an attempt to locate the officers in order to turn and fire a weapon, Archie "offset" his step, moving to the opposite direction of whichever shoulder Dowdy looked over to stay out of his potential line of fire. The officers testified that Dowdy came to an intersection and stopped suddenly as if to turn. Archie, who was closest in pursuit, fired once, striking Dowdy in the back. The entire pursuit, from the time Hendree activated his lights until the officers reported the shooting, lasted under a minute. Dowdy later died from his injury.

The Memphis Police Department investigated the shooting. Though the initial investigator concluded the shooting was justified, the department ultimately discharged Archie after a hearing officer found that he violated the department's deadly force policy. The hearing officer concluded that Archie erroneously believed Dowdy posed a threat to others and failed to

exhaust all other means of capture before resorting to deadly force. Nolen received a forty-five day suspension for failing to remove the vehicle from the NCIC database after confirming the false carjacking report.

Dowdy's heirs, Donovan Savage and Devin Dowdy, sued Archie and the City of Memphis. Plaintiffs brought claims under 42 U.S.C. § 1983, alleging that Archie used excessive force in shooting Dowdy and that the City failed to properly train, supervise, and discipline its police officers. They also asserted negligence claims against the City under the Tennessee Wrongful Death Statute, Tenn. Code Ann. § 20-5-101.

The district court granted summary judgment to Defendants on all counts. It found that Archie was entitled to qualified immunity because his actions were reasonable and that he did not violate any clearly established constitutional right. The court also found that Plaintiffs failed to adduce any evidence suggesting that the City failed to adequately train or discipline its police department. Finally, it held that the City retained its immunity under Tennessee law from Plaintiffs' state law tort claims. Plaintiffs appealed.

## II.

This court reviews a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

Plaintiffs argue that Archie used excessive force against Dowdy by shooting him once in the back. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. An officer may reasonably use deadly force against a fleeing suspect "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Plaintiffs contend that Archie's use of deadly force was objectively unreasonable in light of the facts confronting him. They argue that Archie could have tried to stop Dowdy in a number of ways short of deadly force and suggest that Archie had no basis for concluding that Dowdy was a danger to others "other than the fact that Mr. Dowdy drove the car at high speed and had a wreck." They also attempt to use a video of the shooting—which was not part of the record at summary judgment[1]—to refute Archie's testimony that Dowdy "stopped ready to turn"

---

[1]At summary judgment, Plaintiffs failed to enter any materials into the record by attaching them to their response or filing them separately. After the City pointed out this failing in its reply, Plaintiffs filed a video and the depositions of Archie, Nolen, Memphis Detective Amber Webb, and Plaintiffs' expert, Ronald Janota. But as that filing was untimely, the City moved to strike. Plaintiffs did not respond to the motion. Though the district court noted in its summary-judgment order that its disposition of the case mooted the motion to strike, it specifically endorsed Defendants' argument that the video was *not* part of the record.

at the intersection. Finally, they cite their expert witness's opinion that Archie did not act reasonably.

But as the district court found below, "this case presents one of those rare instances where the use of deadly force was reasonable." Plaintiffs present no evidence to cast doubt on Archie's stated belief that Dowdy was armed and posed a threat to others. And while Dowdy was ultimately found to be unarmed, "[a]n officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 175 (6th Cir. 2004). As the district court held, "there is nothing in the record to suggest that Officer Archie's mistake was objectively unreasonable," particularly in light of the carjacking report and the undisputed fact that Dowdy held one hand in front of him at his waist as he fled. And the expert's conclusory assertion that Archie acted unreasonably cannot create a genuine issue of material fact. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 543 (6th Cir. 1999).

Moreover, Archie would be entitled to qualified immunity even if a genuine issue of material fact remained as to whether he acted reasonably. Plaintiffs point to only one case, *Garner*, to show that Archie's actions violated a clearly established right. But *Garner* hurts rather than helps their case. There, a Memphis police officer shot a suspected burglar, Garner, as he tried to escape custody. *Garner*, 471 U.S. at 3. The officer's testimony established that he used deadly force only to prevent Garner's flight, as he "was 'reasonably sure' and 'figured' that Garner was unarmed." *Id.* This testimony, along with burglary's traditional classification "as a 'property' rather than a 'violent' crime," moved the Court to find the use of deadly force unreasonable under the circumstances. *Id.* at 11–12, 21. Here, by contrast, Archie had "probable cause to believe that [Dowdy] ha[d] committed a crime involving the infliction or threatened

infliction of serious physical harm"—namely, carjacking—and testified to the specific facts supporting his belief that Dowdy was armed and dangerous. *Id.* at 11.

Plaintiffs thus fail to carry their burden of showing that Archie is not entitled to qualified immunity. *See Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). And absent an underlying constitutional violation, Plaintiffs' *Monell* claims against the City necessarily fail as well. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation.") Accordingly, the district court properly awarded summary judgment to Defendants on the § 1983 claims.

IV.

Plaintiffs also assert state-law claims against the City under the Tennessee Wrongful Death Act, Tenn. Code Ann. § 20-5-101. The Tennessee Governmental Tort Liability Act removes governmental immunity from suits for injuries "proximately caused by a negligent act or omission of any employee within the scope of his employment." Tenn. Code Ann. § 29-20-205. The TGTLA preserves immunity, however, from suits involving an injury that arises out of "[t]he exercise or performance or the failure to exercise or perform a discretionary function" or "civil rights." *Id.* § 29-20-205(1)–(2). As the district court recognized, these exceptions preserve the City's immunity from Plaintiffs' claims.

Plaintiffs first allege that the City negligently failed to train, supervise, and discipline its police department. But these claims fall within the TGTLA's discretionary-function exception, which "prevent[s] courts from questioning decisions of governmental entities that are primarily legislative or administrative." *Giggers v. Memphis Hous. Auth.*, 363 S.W.3d 500, 507 (Tenn. 2012). Tennessee courts distinguish between discretionary "planning" decisions and non-discretionary "operational" decisions: "A planning decision frequently requires a governmental

entity to create policies or plans, formulate specifications or schedules, allocate resources, or determine priorities. . . . Operational decisions, however, implement 'preexisting laws, regulations, policies, or standards' that are designed to guide the actions of the governmental entity." *Id.* (quoting *Bowers ex rel. Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992)). As the district court found below, "the sorts of determinations the [Memphis Police Department] must make in how it trains and supervises its employees, staffs its departments, and investigates the alleged wrongdoing of its employees" place the Plaintiffs' direct-negligence claims "squarely within the discretionary function exception."

Second, Plaintiffs seek to hold the City vicariously liable for the negligence of Officers Nolen and Archie. These claims, however, fall within the TGTLA's civil-rights exception, which "has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010). As we observed in *Johnson* and the district court acknowledged below, the majority of courts to address the TGTLA's civil-rights exception have done so by asking whether a plaintiff's claims "are in essence claims for violation of [the plaintiff's] constitutional rights." *Id.* (internal quotation marks omitted). The district court found the exception applicable because the "several layers of negligence [asserted by Plaintiffs] on the part of several actors . . . do[] not change the fact that the essence of [Plaintiffs'] lawsuit remains a civil rights violation."

Plaintiffs address only Nolen's alleged negligence on appeal, arguing that his failure to update the database after confirming the false report sounds not in civil rights but in common-law negligence. Yet we applied the civil-rights exception under a similar factual scenario in *Johnson*, another police-shooting case. There, an emergency dispatcher initially reported a 911 "hang-up" call to Memphis police but failed to update the officers sent to the scene when the

caller phoned again a few minutes later to explain that she called because her husband was bipolar and acting erratically. *Johnson*, 617 F.3d at 871. The plaintiff argued that police would not have entered the house and ultimately shot her husband following an altercation if the dispatcher had conveyed this critical information to the officers. *Id.* But we held that the civil-rights exception covered this related act of negligence because "the dispatcher's negligence ar[ose] out of the same circumstances giving rise to [the plaintiff's] civil rights claim under § 1983." *Id.* at 872. Here, Nolen's alleged negligence arises out of the same circumstances giving rise to Plaintiffs' civil-rights claim. The district court thus correctly concluded that the City retains its immunity from Plaintiffs' negligence claims.

V.

For the foregoing reasons, we AFFIRM the district court's judgment.