GILMAN, Circuit Judge, dissenting:
I respectfully disagree with the majority's conclusion that the warrantless search of Willie Lee Cooks's covered crawlspace was lawful under the exigent-circumstances *747 exception to the search-warrant requirement. Nothing in the record suggests that the officers who arrived at Cooks's home to arrest him believed that Cooks was hiding hostages in the crawlspace or, more importantly, that the situation presented an objective reason to so believe. To the contrary, two officers explicitly testified at the suppression hearing that they had no information whatsoever indicating that there were any people remaining inside Cooks's home, let alone inside of the covered crawlspace, after they removed the four persons of whom they were aware. The government's after-the-fact attempt to justify the officers' search with varying theories presented for the first time on appeal further undermines its position.
Rather than focusing on what information was available to the officers at the time of the warrantless search at issue, the majority focuses on what the officers could not "rule out." See, e.g. , Maj. Op. at 743. This court, however, has held that, in applying the exigent-circumstances exception, "speculation, without any factual support, will not suffice to overcome the warrant requirement." United States v. Lynch , 934 F.2d 1226, 1233 (11th Cir. 1991).
Law-enforcement officers might never be able to positively "rule out" the potential of danger to the public when executing an arrest warrant in a residence. But for the exigent-circumstances exception to apply and render a warrantless search lawful, the "officers must have an objectively reasonable belief that someone inside is seriously injured or threatened with such injury, and is in need of immediate aid." United States v. Timmann , 741 F.3d 1170, 1178 (11th Cir. 2013) (internal quotation marks omitted). The fact that Cooks's crawlspace "might have contained additional hostages," see Maj. Op. at 743, did not give the officers authority to enter that enclosed space without a warrant in the absence of any objective fact suggesting that a hostage was likely inside. I therefore respectfully dissent.
I.
Warrantless searches and seizures inside a person's home are "presumptively unreasonable" under the Fourth Amendment. Payton v. New York , 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). But there are certain exceptions to the warrant requirement, with the government bearing the heavy burden of proving that an exception applies and that probable cause existed. United States v. Blasco , 702 F.2d 1315, 1325 (11th Cir. 1983) ("Because the protections of the [F]ourth [A]mendment are crucial to a free and viable society, the government shoulders a heavy burden of justifying the failure to obtain a warrant prior to the intrusion."). One such exception to the warrant requirement is the "exigent-circumstances exception," which recognizes that a "warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." Michigan v. Tyler , 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).
"The most urgent of these [exigent circumstances] is the need to protect or preserve life in an emergency situation." Timmann , 741 F.3d at 1178 (internal quotation marks omitted). In order for the exception to apply, the officers must have probable cause to believe that an exigent circumstance exists. United States v. Franklin , 694 F.3d 1, 7 (11th Cir. 2012). The standard is an objective one, and the officers' subjective motivations are irrelevant. Timmann , 741 F.3d at 1178.
Accordingly, various courts have found exigent circumstances to enter someone's home or an enclosed space within the *748 home without a warrant in potential hostage situations. But the officers in those cases have had articulable, objective reasons to believe that hostages were likely present in the space being searched. See, e.g ., United States v. Ibarra-Zelaya , 465 F.3d 596, 605 (5th Cir. 2006) (holding that exigent circumstances existed to search an apartment without a warrant when officers received a tip that hostages were being held there and the officers could hear multiple people moving around inside); Satchell v. Cardwell , 653 F.2d 408, 411 (9th Cir. 1981) (holding that exigent circumstances existed to search a trailer without a warrant when officers received a tip that two women were being held at the address and one of the officers heard voices coming from inside the trailer).
During the officers' standoff with Cooks in the present case, they learned that Cooks was armed, that there were four people in Cooks's home (including Cooks), and that Cooks had been "doing something in a hole in the floor." The officers had also heard sounds "similar to a power drill" coming from inside the residence. But the officers had already removed the four people of whom they aware from Cooks's home at the time the crawlspace was searched. After the hostages had been secured and Cooks and Clemons had been taken into custody, the officers did not observe anything to indicate that someone was in the crawlspace, let alone that someone there was in immediate danger.
And once the officers had removed Price from Cooks's home, Price explained that what Cooks was doing "in the floor" was putting guns in the crawlspace. Price's statement weighs heavily against a finding that the officers had probable cause to believe that someone was in danger in the crawlspace, as the majority frankly concedes. Maj. Op. at 743. This is especially so because the officers knew that Cooks was a "gang-member fugitive." Maj. Op. at 743. That knowledge would have (or certainly should have) caused the officers to realize how unlikely the possibility that Cooks would have placed hostages and guns in the same location.
In addition, the officers explicitly testified that they had no reason to believe that any additional people were inside of Cooks's home, much less inside of the enclosed crawlspace. Officer Deramus testified that he knew that there were four people in the home based on "voice communication" and who he "actually saw," and that his belief that only four people were in the home never changed. Sergeant Watts also testified that he did not "have any information whatsoever that more than four [people] were in" the home. Simply put, the officers provided no articulable fact at the evidentiary hearing that would support an objective belief that there were any hostages in the crawlspace. See United States v. Johnson , 22 F.3d 674 (6th Cir. 1994) (holding that although the discovery of a kidnap victim locked in an apartment provided exigency for entry, there was no exigency to search for and remove weapons from a closet once the victim was located).
Finally, if the officers had a reason to believe that there were additional hostages in Cooks's home, then they could have asked any of the four people they had removed whether anyone else was inside. Officer Deramus testified that he never so asked. Nor did any officer call down into the crawlspace to inquire whether anyone was there. The fact that no officer thought to ask whether anyone else was inside the home or in the crawlspace further supports the conclusion that there was no objective reason to believe that a hostage was inside. This absence of inquiry also supports the conclusion that the "hostage in the crawlspace" explanation was an after-the-fact *749 justification for the illegal search concocted by the government. Along the same lines, the various (and outlandish) additional justifications offered by the government for the first time on appeal-that the officers could have reasonably believed that a confederate was in the crawlspace escaping with evidence or that Cooks placed an explosive device in the floor-support that conclusion as well.
The main testimony that the majority points to as affirmatively supporting the possibility of a hostage being in Cooks's crawlspace is that the officers heard drilling coming from inside his home. Maj. Op. at 743-44. From this, the majority suggests one of two possibilities: that Cooks was hiding either something or someone in the crawlspace. Maj. Op. at 743-44. But, again, Price told the officers exactly what Cooks was doing-he was hiding guns, not a hostage.
In sum, the government failed to carry its burden of proving that the officers had "an objectively reasonable belief" that someone was in danger in Cooks's crawlspace. See United States v. Timmann , 741 F.3d 1170, 1178 (11th Cir. 2013). That scenario might have been within the realm of possibility, but "[s]uch speculation, without any factual support, will not suffice to overcome the warrant requirement." See United States v. Lynch , 934 F.2d 1226, 1233 (11th Cir. 1991).
II.
In an attempt to find objective facts supporting the exigent-circumstances exception, the majority improperly focuses on what the officers did not know at the time of the warrantless search, rather than what facts existed to support an objectively reasonable belief that a hostage was inside the crawlspace. See, e.g. , Maj. Op. at 738 ("Just as important here is what the officers didn't know ...."). Pointing out that the officers "were not sure whether there were others" in Cooks's home and that the officers "at the very least, couldn't rule out" the possibility of hostages in the crawlspace, Maj. Op. at 743 (emphasis omitted), turns the probable-cause inquiry on its head.
The concept of probable cause depends on objective facts and circumstances present at the time of the officers' conduct. See, e.g. , Florida v. Harris , 568 U.S. 237, 243, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) (holding that, in the Fourth Amendment context, an officer "has probable cause to conduct a search when the facts available to [him] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present" (internal quotation marks omitted)); Beck v. Ohio , 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (explaining that probable cause turns on "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information"). It does not depend on what officers cannot "rule out" or on what is within the realm of possibility. See Illinois v. Wardlow , 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (" '[R]easonable suspicion' is a less demanding standard than probable cause."); Lynch , 934 F.2d at 1233 ("[S]peculation, without any factual support, will not suffice to overcome the warrant requirement.").
The analysis of probable cause in the exigent-circumstances context should be no different. Demonstrating that the officers had probable cause to believe that an exigent circumstance existed is a burden borne by the government. United States v. Holloway , 290 F.3d 1331, 1337 (11th Cir. 2002). In the present case, the government pointed to no fact or circumstance "within [the officers'] knowledge and of which they had reasonably trustworthy information" to warrant a reasonable belief that there *750 was a hostage in Cooks's crawlspace. See Beck , 379 U.S. at 91, 85 S.Ct. 223 ; see also Harris , 568 U.S. at 243, 133 S.Ct. 1050. Nor did the government point to anything more than unparticularized speculation to support such a belief. See Lynch , 934 F.2d at 1233.
Although there could have been a hostage in the crawlspace, the officers lacked probable cause to believe that to be the case. If the exigent-circumstances inquiry turned on whether such a circumstance could exist, rather than on whether the officers had probable cause to believe that it did in fact exist, then officers would have license to search any crawlspace, closet, shed, or other enclosed space not covered by a lawful protective sweep by simply claiming that they could not "rule out" the possibility that someone was inside.
The majority's response to the officers' lack of probable cause to believe that a hostage was in the crawlspace is that the officers did not "need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." Maj. Op. at 744 (quoting Michigan v. Fisher , 558 U.S. 45, 49, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009) ). That, of course, is true. See Illinois v. Gates , 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("[S]tandards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable-cause] decision."). But the government still must demonstrate that such probable cause-"an objectively reasonable basis for believing" that someone was in danger, see Brigham City v. Stuart , 547 U.S. 398, 406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) -existed. It failed to do so in the present case.
The majority also contends that this court cannot "armchair quarterback the officers' decision" because the police must act quickly when exigent circumstances exist. Maj. Op. at 742. But this contention begs the question of whether exigent circumstances actually existed in the present case. Our role as an appellate court indeed requires us to "armchair quarterback" that issue.
Here, the facts and circumstances do not support a finding that the officers had probable cause to believe that a hostage was in the crawlspace. Once the officers had secured Cooks and removed the only other known occupants from the home, they had no objective reason to immediately conduct a warrantless search of the crawlspace, a space that one of the occupants had already told them contained multiple guns. They thus had plenty of time to attain a search warrant, as they in fact eventually did.
III.
I now turn to the cases that the majority cites to support its proposition that "searches under the emergency-aid exception have been upheld in circumstances that would seem to be far less ominous than those here." Maj. Op. at 744. Contrary to the majority's characterizations, those cases actually involve circumstances far more ominous than in the present case. In Michigan v. Fisher , 558 U.S. 45, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009), for example, the Supreme Court upheld a warrantless search under the exigent-circumstances doctrine where,
[u]pon their arrival, the officers found a household in considerable chaos: a pickup truck in the driveway with its front smashed, damaged fenceposts along the side of the property, and three broken house windows, the glass still on the ground outside. The officers also noticed blood on the hood of the pickup and on clothes inside of it, as well as on one of the doors to the house. ... Through a window, the officers could see [the defendant]
*751 inside the house, screaming and throwing things. The back door was locked, and a couch had been placed to block the front door.
Id. at 45-46, 130 S.Ct. 546.
The exigent-circumstances exception was found applicable in Fisher because, when the officers arrived, they "found signs of a recent injury, perhaps from a car accident, outside" and "could see violent behavior inside." Id. at 48, 130 S.Ct. 546. And, importantly, the officers were responding to a report of a disturbance when they arrived at the defendant's home. Id . Fisher 's circumstances were thus far more ominous than the circumstances surrounding the warrantless search here, which provided no objective indication of recent injury or violence in Cooks's crawlspace.
The majority also cites Johnson v. City of Memphis , 617 F.3d 864 (6th Cir. 2010), as another case in which the exigent-circumstances exception was applied to what the majority inexplicably characterizes as "far less ominous" circumstances. Maj. Op. at 744. In Johnson , the Sixth Circuit held "that the combination of a 911 hang [up] call, an unanswered return call, and an open door with no response from within the residence is sufficient to satisfy the exigency requirement." Johnson , 617 F.3d at 869. But, as the court noted,
[t]he whole point of the 911 system is to provide people in need of emergency assistance an expeditious way to request it. ... Because a 911 call is by its nature an appeal for help in an emergency, the emergency aid exception best fits the attitude of police responding to a 911 call under the circumstances present here.
Id. at 870.
In contrast to Fisher and Johnson , the present case does not involve circumstances in which a reasonable officer would similarly infer that someone was in Cooks's crawlspace and in need of immediate aid. Neither Fisher nor Johnson , furthermore, analyzed whether entry into an enclosed space (such as a crawlspace) within a defendant's home would have been justified under the circumstances of those cases.
Finally, I disagree with the majority's contention that this court's recent holding in Montanez v. Carvajal , 889 F.3d 1202 (11th Cir. 2018), supports the majority's conclusion. See Maj. Op. at 745. First, the holding of Montanez is relatively narrow. The court held that "if police have probable cause to suspect a residential burglary[,] ... they may, without further justification, conduct a brief warrantless search of the home to look for suspects and potential victims." Montanez , 889 F.3d at 1208-09. And, as the majority recognizes, executing an arrest warrant does not carry the same risks inherent in responding to a residential burglary. Maj. Op. at 745-46.
More significantly, in conducting the search at issue in Montanez , the officers entered the home and discovered marijuana and drug paraphernalia in plain view . Montanez , 889 F.3d at 1206. The Montanez court accordingly limited its holding to allow only "a brief warrantless search of the home." Id . at 1209 (emphasis added). In the present case, the challenged evidence was not discovered in plain view, but rather by physically removing a screwed-down plywood covering from the crawlspace. Montanez is therefore inapposite.
IV.
For all of the foregoing reasons, I believe that the exigent-circumstances exception did not justify the officers' warrantless search of the covered crawlspace in Cooks's home. I also fully agree with the district court's conclusion that the officers *752 exceeded the scope of an otherwise lawful protective sweep when they pried open the crawlspace cover and searched the space inside. Accordingly, I would reverse the judgment of the district court and remand this case for further proceedings consistent with my dissent.