NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0295n.06

No. 12-3732

**FILED**

**Mar 25, 2013**

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TIM L. NEFF; BOBBIE K. NEFF,                )
                                            )
    Plaintiffs-Appellants,                  )
                                            )
                                            )  ON APPEAL FROM THE UNITED
v.                                          )  STATES DISTRICT COURT FOR THE
                                            )  SOUTHERN DISTRICT OF OHIO
FLAGSTAR BANK, FSB,                         )
                                            )
    Defendant-Appellee.                     )  OPINION
                                            )
_____ )

**Before: MARTIN and GILMAN, Circuit Judges; and FOWLKES, District Judge.**[*]

RONALD LEE GILMAN, Circuit Judge.  Tim and Bobbie Neff brought this action against

Flagstar Bank for fraudulent misrepresentation (Count I), violation of the Fair Debt Collection

Practices Act (FDCPA), 15 U.S.C. § 1692l(a)(1) (Count II), and breach of contract (Count III) in

connection with the bank's foreclosure on their residence.  Due to the Neffs' financial difficulties

in 2009, they requested Flagstar to modify the repayment terms of their home mortgage loan.  The

Neffs' Complaint alleges that Flagstar's conduct both before and after the bank commenced

foreclosure is the basis for their three causes of action.

Flagstar filed a motion to dismiss the Complaint in its entirety for failure to state a claim.

The district court granted Flagstar's motion on the basis of res judicata, a ground not raised as a

defense or otherwise argued by Flagstar.  For the reasons set forth below, we **REVERSE** the

_____

[*] The Honorable John T. Fowlkes, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.    Factual background

The following facts are summarized from the Neffs' Complaint. These facts are not currently in dispute because the case is before us on appeal from a motion to dismiss for failure to state a claim.

Some time after the Neffs refinanced their home mortgage loan with Flagstar in September 2008, they began experiencing financial difficulties. In September 2009, they requested a loan modification from the bank. Flagstar asked the Neffs to submit paperwork to see if they would qualify for such a modification. Tim Neff spoke on the telephone with Flagstar representatives in October and November 2009 and complied with their requests for additional paperwork, including paycheck stubs and bank statements. In February 2010, Flagstar offered the Neffs a "reinstatement arrangement that required the Neffs to pay [Flagstar] $1,116.92" per month from March to June 2010.

The Neffs made the requested payments. In the interim, however, they received a letter from Flagstar notifying them that their loan was in default. But in a June 2010 telephone call, a Flagstar representative told Tim Neff that the bank was preparing a loan-modification agreement for the Neffs' mortgage. Yet no modification proposal ever came from the bank. Instead, the Neffs received subsequent requests for more paperwork and another letter stating that the mortgage was

in default. The Neffs again complied with Flagstar's requests, and the bank again told the Neffs that

it was "working on the Neffs' file." In December 2010, the Neffs received another default letter, this

time sent from a law firm, which stated that the Neffs owed Flagstar $151,351.10. When Tim Neff

inquired in January 2011 about the status of the loan modification, a Flagstar representative told him

that the bank was working on it. That same month, Flagstar commenced a foreclosure action in the

Knox County Court of Common Pleas.

A month after filing the foreclosure proceedings, Flagstar asked the Neffs to send "a financial

form and the last two paystubs," which Tim Neff promptly provided. The bank had no contact with

the Neffs again until Tim Neff inquired in May 2011 about the status of the loan modification. Once

again, Flagstar told him to keep updating his file with more financial paperwork. Believing that

Flagstar was finalizing a loan-modification agreement, the Neffs did not respond to the foreclosure

proceedings. Flagstar later moved for a default judgment, which was entered against the Neffs in

July 2011.

The pattern of Tim Neff's inquiring about the status of a loan-modification agreement and

Flagstar's answering with requests for more paperwork continued in August and September 2011,

with the bank stating "that it was working on a new agreement for the Neffs." In a September 2011

telephone conversation, Tim Neff asked "whether the Neffs should retain counsel to help resolve the

Neffs' situation." Tim Neff was advised by the Flagstar representative not to obtain counsel because

the bank "could do the same thing an attorney could do, and that counsel was not necessary."

Relying on this statement, the Neffs did not retain counsel.

On September 14, 2011, the Knox County Court of Common Pleas ordered a sheriff's sale of the Neffs' home. Tim Neff received notice of the scheduled sale through a newspaper listing. Only after another phone call and request for paperwork from Flagstar in October 2011 did the Neffs realize that "they had been duped." They finally retained counsel in mid-November 2011. The Neffs then promptly sought relief from the default judgment and a stay of the sheriff's sale, but were unsuccessful. Flagstar purchased the Neffs' home at the sheriff's sale held on December 9, 2011.

**B.     Procedural background**

Two weeks after the sheriff's sale, the Neffs filed their Complaint in federal district court, alleging that Flagstar's conduct from September 2009 onward constituted fraudulent misrepresentation, a FDCPA violation, and a breach of contract. Instead of filing an answer, Flagstar moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint for failure to state a claim. Flagstar argued in its brief supporting the motion to dismiss that the Neffs' fraudulent-misrepresentation claim was not pleaded with sufficient particularity, did not identify a material misstatement of fact that caused harm, and was barred by the statute of frauds. The bank next contended that the FDCPA claim failed because the FDCPA does not apply to an entity that attempts to collect a debt that it originated. And finally, Flagstar argued that Count III (styled as a "breach of contract and promissory estoppel" claim) was likewise barred by the statute of frauds and also failed to allege detrimental reliance. Flagstar's reply brief raised no other grounds for dismissing the Complaint.

After briefing was complete on Flagstar's motion to dismiss, the Neffs filed a motion for a temporary restraining order (TRO). The Neffs asked the district court to enjoin any eviction or transfer of title to a third party so as to "maintain the status quo during the pendency of [the] case." Flagstar made the following additional arguments in opposition to the TRO motion that it did not make in its motion to dismiss: (1) that the Anti-Injunction Act prohibits the district court from staying proceedings in an Ohio state court, (2) that the *Rooker-Feldman* doctrine precludes the district court from reviewing a final judgment of an Ohio state court, and (3) that collateral estoppel prevents the district court from making findings contrary to those of an Ohio state court.

The district court granted Flagstar's motion to dismiss, but not based on any of the arguments raised in the bank's briefs. Instead, the court concluded that it was "precluded from hearing this case by the doctrine of *res judicata*" because Ohio's four-part test for res judicata was met. Flagstar's foreclosure action in state court thus barred the Neffs' claims in the present case. The court consequently denied the Neffs' motion for a TRO as moot. This timely appeal followed.

## II.  ANALYSIS

### A.  Standard of review

"We review de novo a district court's order granting a motion to dismiss pursuant to Rule 12(b)(6)." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011). That same standard applies to our review of "a district court's application of res judicata." *Id.* (internal quotation marks omitted).

### B.  The district court erred by raising the res judicata defense sua sponte

On appeal, both parties have addressed whether the Neffs' current claims and the prior litigation in state court meet Ohio's four-part test for res judicata. But neither party has addressed the preliminary issue regarding the propriety of the district court's raising sua sponte an affirmative defense that Flagstar failed to plead or otherwise argue in its motion and supporting briefs.

The Neffs' "[f]ailure to raise an issue on appeal would normally constitute a waiver of that issue," *see Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000), but this court has used its "discretion to reach an issue that the parties have not briefed where it involves a pure question of law that cries out for resolution," *Hutcherson v. Lauderdale Cnty.*, 326 F.3d 747, 756 (6th Cir. 2003) (internal quotation marks omitted). In the present case, the district court's sua sponte reliance on res judicata is such a "pure question of law" that warrants our consideration.

The district court held that res judicata precluded it from hearing this case. By using the phrase "precluded from hearing," the court incorrectly suggests that res judicata stripped it of subject-matter jurisdiction. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 582 (6th Cir. 2009) ("Fed. R. Civ. P. 8(c) clearly frames *res judicata* as an affirmative defense, which means that it can be waived and that it does not go to subject-matter jurisdiction."). Unlike res judicata, the conceptually related *Rooker-Feldman* doctrine *is* jurisdictional and therefore may properly be raised by the court sua sponte. *Saker v. Nat'l City Corp.*, 90 F. App'x 816, 818 n.1 (6th Cir. 2004) ("Because *Rooker-Feldman* concerns federal subject matter jurisdiction, this court may raise the issue *sua sponte* at any time."); *see also Gilbert v. Ferry*, 401 F.3d 411, 416 (6th Cir. 2005) (describing the *Rooker-Feldman* doctrine in jurisdictional terms). But because the district court

expressly applied Ohio's law of res judicata, not the *Rooker-Feldman* doctrine, its sua sponte

addressing of the issue cannot be justified as a jurisdictional inquiry.

Rule 8(c) of the Federal Rules of Civil Procedure lists res judicata as an affirmative defense

available to the defending party, and "[c]ourts generally lack the ability to raise an affirmative

defense sua sponte." *Hutcherson*, 326 F.3d at 757. "Nevertheless, the Supreme Court has indicated

that a court may take the initiative to assert the res judicata defense sua sponte in 'special

circumstances.'" *Id.* (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)). The "special

circumstance" recognized in *Arizona*, which was first articulated by Justice Rehnquist in his dissent

in *United States v. Sioux Nation of Indians*, 448 U.S. 371, 432 (1980), is when "a court is on notice

that it has previously decided the issue presented." *Arizona*, 530 U.S. at 412 (internal quotation

marks omitted).

Such was the basis for affirming the district court's sua sponte assertion of res judicata in

*Holloway Construction Co. v. United States Department of Labor*, 891 F.2d 1211, 1212 (6th Cir.

1989) (per curiam). The Sixth Circuit has also held that the unavailability of the res judicata defense

when a defendant filed its motion for judgment on the pleadings was likewise a "special

circumstance" that justified a court's sua sponte raising of the defense when it later became

available. *See Hutcherson*, 326 F.3d at 757. In *Hutcherson*, moreover, the plaintiffs were already

"on notice of a potential res judicata defense" because the defendants had "raise[d] the issue of

duplicative proceedings." *Id.*

Unlike in *Arizona* or *Holloway*, the district court in the present case gave preclusive effect to a judgment of another court (the Knox County Court of Common Pleas), not to one of its own prior decisions. And the res judicata defense here, unlike the circumstances in *Hutcherson*, was available at the time Flagstar filed its motion to dismiss because the state court had already entered the judgment that would arguably preclude the Neffs' claims. Even if we were to accept the contention made by Flagstar's counsel at oral argument that the res judicata defense was not available until the sheriff's sale in December 2011 was confirmed by the state court on April 2, 2012 (six weeks after Flagstar filed its motion to dismiss in federal court), the bank still failed to raise the defense in its April 23, 2012 opposition to the Neffs' motion for a TRO. In sum, no facts in the record exempt this case from the general rule that courts should not address sua sponte affirmative defenses that defending parties fail to raise.

Flagstar raised a different affirmative defense—the statute of frauds—in its motion to dismiss. The bank also argued that *Rooker-Feldman* and collateral estoppel, two doctrines closely related to res judicata, precluded the injunctive relief that the Neffs sought. Notably, however, Flagstar directed its *Rooker-Feldman* and collateral-estoppel arguments only to the impropriety of injunctive relief and not to the Neffs' likelihood of success on the merits. These facts suggest that Flagstar knew the range of affirmative defenses potentially available, argued the one that it determined was applicable to defeat the merits of the Neffs' Complaint (the statute of frauds), and determined that doctrines related to res judicata (but not res judicata itself) defeated the Neffs' TRO motion.

Flagstar thus failed to raise res judicata as an affirmative defense and the district court identified no "special circumstances" to justify addressing the issue sua sponte. Nor do any such circumstances appear from the record. We therefore conclude that the district court erred in granting Flagstar's motion to dismiss based on a waived affirmative defense that was never argued.

**C.    Litigation efficiencies do not warrant addressing the res judicata issue or the merits of Flagstar's Rule 12(b)(6) motion**

Certain aspects of the present case make it tempting to reach the substance of the res judicata issue despite Flagstar's failure to raise the defense below and the district court's error in addressing the issue sua sponte. These aspects are that the parties have fully briefed the issue on appeal, the Neffs did not argue that the res judicata defense was waived, and there is a relevant opinion below for us to review. But several stronger reasons counsel against our reaching the merits of the res judicata issue.

First, res judicata is a doctrine based in part on the policy of promoting efficiency in litigation and conserving judicial resources. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). At first blush, this rationale would seem to support ignoring the procedural defect below to reach the res judicata issue. But addressing the issue on appeal would, in effect if not in words, condone the course taken by the district court. The court raised the res judicata issue only after the parties had fully briefed Flagstar's potentially dispositive motion and the Neffs' motion for a TRO. Costs associated with preparing and responding to those motions were at that point already incurred, thus reducing the potential litigation efficiencies that a res judicata disposition would achieve. In other words, a doctrine meant to prevent

relitigation of claims from a prior action is less efficacious when applied only after significant litigation in the subsequent action has already occurred.

Addressing the res judicata issue on appeal would also undermine the force of Rule 8(c)'s requirement that res judicata must be pleaded as an affirmative defense in order to be considered and would be in disregard of the Supreme Court's recognition that exceptions to the application of that Rule's mandate should be made only in "special circumstances." *See Arizona*, 530 U.S. at 412. Limiting any exceptions to Rule 8(c)'s requirement promotes litigation efficiency in its own right by encouraging defending parties to timely raise the res judicata defense. A properly raised defense, in turn, gives the court the benefit of full briefing before rendering a decision, thereby reducing the risk of error. The risk of error is especially pronounced in a case like this where the issue that was not briefed in the district court—the application of Ohio's law of res judicata—pertains to an area of law in which the federal courts generally have less expertise and certainly have less authority.

Moreover, the particular res judicata issue in the present case is complicated and lacks controlling Ohio precedent. *Compare Tolliver v. Liberty Mut. Fire Ins. Co.*, No. 2:06-CV-904, 2010 WL 148159, at *2, *5 (S.D. Ohio Jan. 11, 2010) (holding, without citation to Ohio law, that Ohio res judicata law does not preclude claims based on the defendant's alleged conduct during the course of state-court litigation, despite the plaintiff's having filed a Rule 60(b) motion in that litigation), *with Sessley v. Wells Fargo Bank, N.A.*, No. 2:11-cv-348, 2012 WL 726749, at *9 (S.D. Ohio Mar. 6, 2012) (holding, without citation to Ohio law, that a judgment obtained by fraud has preclusive

effect because the claim of fraud "should have been made in a Rule 60 motion"). Indeed, were we to decide the res judicata issue, it would make new Ohio law no matter the conclusion reached.

Further clarity in this area of law is certainly desirable, "[b]ut where interpretation of the state-law issue is not necessary in order to properly resolve the appeal, we find it advisable not to do so." *Partee v. City of Memphis*, 449 F. App'x 444, 449 (6th Cir. 2011); *see also Brown v. Raymond Corp.*, 432 F.3d 640, 650 (6th Cir. 2005) (Ryan, J., concurring) (noting that federal courts sitting in diversity should avoid declaring a new rule of state law if the case can otherwise be properly decided). In sum, we conclude that the better course is to remand the case to the district court for consideration of the merits of Flagstar's motion to dismiss based on the issues actually raised by Flagstar.

Flagstar nevertheless requests that we decide the merits of its motion in the first instance, arguing that "[i]f the District Court reached the right result for the wrong reason, judicial economy is not served by remanding a case for the sole purpose of reinstating the dismissal." Whether the district court reached the right result, however, is far from clear. Although the district court's error in raising the res judicata issue sua sponte has delayed the proper consideration of the motion, that delay does not warrant abandoning the normal course of litigation. The district court should have the first opportunity to address the various issues raised in Flagstar's motion to dismiss.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

No. 12-3732
*Neff et al. v. Flagstar Bank*